# COMMERCIAL PROMISSORY NOTE

**Date: June 2, 2015**             **Amount: $700,000.00**             **Maturity Date: June 2, 2016**

FOR VALUE RECEIVED, **Greenleaf Resources, Inc.**, a Mississippi corporation (herein called "Borrower"). **PROMISES TO PAY TO THE ORDER OF GILLESPIE PARTNERS, LTD.**, a Texas limited partnership (herein sometimes called the "Payee" or the "Lender"), at its offices in Nacogdoches County, Texas, the mailing address of which is P.O. Box 631107, Nacogdoches, Texas 75963, or elsewhere as the holder hereof may designate in writing, the principal sum of **SEVEN HUNDRED THOUSAND AND NO/100 (700,000.00) DOLLARS**, together with interest computed daily on the outstanding principal balance hereunder, at an annual interest rate, and in accordance with the payment schedule, indicated below.

1.    **Interest Rate**. The Interest Rate shall be **TWELVE (12.0%) percent** fixed for the term of this loan.

2.    **Payment Schedule**. This Note, both principal and interest, shall be due and payable as follows: Principal together with all accrued unpaid interest will be due and payable on or before June 2, 2016. All payments will be applied first to accrued interest and the balance to principal.

3.    **Accrual Method**. Interest at the Rate set forth above will be calculated by the 30/360 calendar days in a year method.

4.    **WAIVER OF RIGHT TO TRIAL BY JURY: EACH PARTY HERETO HEREBY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, THE OTHER TRANSACTION DOCUMENTS, THE SECURITIES OR THE SUBJECT MATTER HEREOF OR THEREOF. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.**

5.    **Waivers, Consents and Covenants**. Borrower, any indorser or guarantor hereof, and Obligor, all and each of them, jointly and severally: (a) waive presentment, demand, protest, notice of demand, notice of intent to accelerate, notice of acceleration of maturity, notice of protest, notice of nonpayment, notice of dishonor, and any other notice required to be given under the law to any Obligor in connection with the delivery, acceptance, performance, default or enforcement of this Note, any indorsement or guaranty of this Note, or any other documents executed in connection with this Note or any other note or other loan documents now or hereafter executed in connection with any obligation of Borrower to Lender (the "Loan Documents"); (b) consent to all delays, extensions, renewals or other modifications of this Note or the Loan Documents, or waivers of any term hereof or of the Loan Documents, or release or discharge by Lender of any of Obligor, or release, substitution or exchange of any security for the payment hereof, or the failure to act on

**EXHIBIT**
A
tabbies

the part of Lender. or any indulgence shown by Lender (without notice to or further assent from any of Obligor). and agree that no such action. failure to act or failure to exercise any right or remedy by Lender shall in any way affect or impair the obligations of any Obligor or be construed as a waiver by Lender of. or otherwise affect. any of Lender's rights under this Note. under any indorsement or guaranty of this Note or under any of the Loan Documents: and (c) agree to pay. on demand, all costs and expenses of collection or defense of this Note or of any indorsement or guaranty hereof and/or the enforcement or defense of Lender's rights with respect to. or the administration, supervision, preservation, or protection of. or realization upon, any property securing payment hereof, including, without limitation, reasonable attorney's fees, including fees related to any suit, mediation or arbitration proceeding. out of court payment agreement. trial, appeal, Lenderruptcy proceedings or other proceeding, in such amount as may be determined reasonable by any arbitrator or court. whichever is applicable.

6.      **Prepayments**. Prepayments may be made in whole or in part at any time.

7.      **Events of Default**. The following are events of default hereunder: (a) the failure to pay or perform any obligation. liability or indebtedness of Borrower or any Obligor to Lender. or to any affiliate or subsidiary of the Lender.. whether under this Note or any Loan Documents. within five (5) days of the due date (whether upon demand, at maturity or by acceleration): (b) the failure to pay or perform any other obligation. liability or indebtedness of Borrower or Obligor to any other party: (c) the resignation or withdrawal of any partner or a material owner/guarantor of Borrower. as determined by Lender in its sole discretion; (d) the commencement of a proceeding against any Obligor for dissolution or liquidation. the voluntary or involuntary termination or dissolution of any Obligor or the merger or consolidation of any Obligor with or into another entity: (e) the insolvency of. the business failure of. the appointment of a custodian, trustee. liquidator or receiver for or for any of the property of. the assignment for the benefit of creditors by. or the filing of a petition under Lenderruptcy. insolvency or debtor's relief law or the filing of a petition for any adjustment of indebtedness. composition or extension by or against any Obligor; (f) the determination by Lender that any representation or warranty made to Lender by Borrower or any Obligor in any Loan Documents or otherwise is or was. when it was made. untrue or materially misleading: (g) the failure of Borrower or Obligor hereunder to timely deliver within fifteen (15) days such financial statements. including tax returns. other statements of condition or other information, as Lender shall request from time to time: (h) the entry of a judgment against any Obligor which Lender deems to be of a material nature. in Lender's sole discretion; (i) the seizure or forfeiture of. or the issuance of any writ of possession. garnishment or attachment, or any turnover order for any property of any Obligor: (j) the determination by Lender that it is insecure for any reason; (k) the determination by Lender that a material adverse change has occurred in the financial condition of Borrower: (l) the failure of Borrower's business to comply with any law or regulation controlling its operation: or (m) any breach by Borrower of the terms and conditions set forth in the Security Agreement executed on even date herewith made by Borrower described in Paragraph 15. below.

8.      **Remedies upon Default**. Whenever there is a default under this Note (a) the entire balance outstanding hereunder and all other obligations of the Borrower and any Obligor hereunder to Lender (however acquired or evidenced) shall. at the option of Lender. become immediately due and payable and any obligation of Lender to permit further borrowing under this

Note shall immediately cease and terminate, and or (b) to the extent permitted by law, the Rate of interest on the unpaid principal shall be increased at Lender's discretion up to the maximum rate allowed by law, or if none, 18% per annum (the "Default Rate"). The provisions herein for a Default Rate shall not be deemed to extend the time for any payment hereunder or to constitute a "grace period" giving Borrower and any Obligor hereunder a right to cure any default. At Lender's option, any accrued and unpaid interest, fees or charges may, for purposes of computing and accruing interest on a daily basis after the due date of the Note or any installment thereof, be deemed to be a part of the principal balance, and interest shall accrue on a daily compounded basis after such date at the Default Rate provided in this Note until the entire outstanding balance of principal and interest is paid in full. Upon a default under this Note, Lender is hereby authorized at any time, at its option and without notice or demand, to set off and charge against any deposit accounts of any Borrower and any Obligor hereunder (as well as any money, instruments, securities, documents, chattel paper, credits, claims, demands, income and any other property, rights and interests of Borrower and any Obligor hereunder), which at any time shall come into the possession or custody or under the control of Lender or any of its agents, affiliates or correspondents, any and all obligations due hereunder. Additionally, Lender shall have all rights and remedies available under each of the Loan Documents, including the Security Agreement described in Paragraph No. 15 below, as well as all rights and remedies available at law or in equity.

9.    **Non-Waiver**. The failure at any time of Lender to exercise any of its options or any other rights hereunder shall not constitute a waiver thereof, nor shall it be a bar to the exercise of any of its options or rights at a later date. All rights and remedies of Lender shall be cumulative and may be pursued singly, successively or together, at the option of Lender. The acceptance by Lender of any partial payment shall not constitute a waiver of any default or of any of Lender's rights under this Note. No waiver of any of its rights hereunder, and no modification or amendment of this Note, shall be deemed to be made by Lender unless the same shall be in writing, duly signed on behalf of Lender; each such waiver shall apply only with respect to the specific instance involved, and shall in no way impair the rights of Lender or the obligations of Obligor to Lender in any other respect at any other time.

10.    **Applicable Law, Venue and Jurisdiction**. Borrower agrees that this Note shall be deemed to have been made in the State of Texas and shall be governed by, and construed in accordance with, the laws of the State of Texas and is performable in the City and County of Nacogdoches, Texas, in any litigation in connection with or to enforce this Note or any indorsement or guaranty of this Note or any Loan Documents. Obligor, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of Texas or the United States courts located within the State of Texas. Nothing contained herein shall, however, prevent Lender from bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law.

11.    **Partial Invalidity**. The unenforceability or invalidity of any provision of this Note shall not affect the enforceability or validity of any other provision herein and the invalidity or unenforceability of any provision of this Note or of the Loan Documents to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

12. **Binding Effect**. This Note shall be binding upon and inure to the benefit of Borrower. Obligor and Lender and their respective successors, assigns, heirs and personal representatives, provided, however, that no obligations of Borrower or Obligor hereunder can be assigned without prior written consent of Lender.

13. **Controlling Document**. To the extent that this Note conflicts with or is in any way incompatible with any other document related specifically to the loan evidenced by this Note, this Note shall control over any other such document, and if this Note does not address an issue, then each other such document shall control to the extent that it deals most specifically with an issue.

14. **Business and Commercial Purposes for Loan**. Borrower represents to Lender that the proceeds of this loan are to be used primarily for business, commercial or agricultural purposes. Borrower acknowledges having read and understood, and agrees to be bound by, all terms and conditions of this Note. Borrower further admits and stipulates that this Note is for commercial purposes as that term is defined by the Texas Finance Code.

15. **Security Agreement**. This Note is secured for payment by a Deed of Trust-Security Agreement-Financing Statement of even date herewith granting to **Bill Pedersen, Jr.**, Trustee, a Deed of Trust Lien on that certain real property described as follows, to-wit:

**Property (including any improvements):** Being 16.54 acres of land, more or less, in Ward County, Texas, being the same land described in that Warranty Deed dated November 12, 2013, frm Jess Anthony, LLC, et al to Greenleaf Resources, Inc., which is recorded in Volume 989, Page 189, of the Official Public Records of Ward County, record reference to which deed is here made for descriptive purposes, and which is also described in Exhibit A which is attached hereto and incorporated herein by reference for descriptive purposes; and,

this Note is also secured for payment by one Security Agreement by and between **Borrower** (as "debtor" therein) and Lender (as "secured party" therein) of even date herewith granting to Lender a security interest lien in and to equipment Borrower located on the above described land..

16. **Insurance**. TEXAS FINANCE CODE SECTION 307.052 COLLATERAL PROTECTION INSURANCE NOTICE: (A) BORROWER IS REQUIRED TO: (i) KEEP THE PROPERTY INSURED AGAINST DAMAGE IN THE AMOUNT LENDER SPECIFIES; (ii) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER; AND (iii) NAME LENDER AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVEN OF A LOSS; (B) MORTGAGOR MUST, IF REQUIRED BY LENDER, DELIVER TO LENDER A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF PREMIUMS; AND (C) IF BORROWER FAILS TO MEET ANY REQUIREMENT LISTED IN PARAGRAPH (A) OR (B), LENDER MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF BORROWER AT BORROWER'S EXPENSE.

17. **Pre-suit Notice Regarding Legal Compliance**. Prior to initiating any claim that either this Note or the Deed of Trust which it secures or both or any other document ancillary

to either said of said instruments. or any action or inaction by Lender, or by any other person, is legally non-compliant. illegal or unenforceable. Borrower must provide Lender with a detailed written notice of Borrower's claim and relief requested and a reasonable opportunity of not less than 60 days to cure the claim. Any notice to Lender must be sent by certified mail. return receipt requested, at Lender's address shown hereinabove, to the attention of Lender's Chief Executive Officer. Any corrective action shall reliever Lender of any liability to the extent permitted by law. To the extent permitted by law, this requirement for pre-suit notice is cumulative of any notices and corrective-action procedures required by applicable law.

18. **Compliance**. It is the intention of Lender and Borrower to comply with applicable law.  In each and every instance. Lender's rights are limited by applicable law (to the extent that same may not be lawfully waived). construed so as to comply with applicable laws, and such rights may not be exercised except to the extent permitted by applicable law.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE.

"BORROWER":
**Greenleaf Resources, Inc.**

By:_____
      Edgar L. Vines, Jr., President

to either said of said instruments. or any action or inaction by Lender. or by any other person. is legally non-compliant. illegal or unenforceable. Borrower must provide Lender with a detailed written notice of Borrower's claim and relief requested and a reasonable opportunity of not less than 60 days to cure the claim. Any notice to Lender must be sent by certified mail. return receipt requested. at Lender's address shown hereinabove. to the attention of Lender's Chief Executive Officer. Any corrective action shall reliever Lender of any liability to the extent permitted by law. To the extent permitted by law. this requirement for pre-suit notice is cumulative of any notices and corrective-action procedures required by applicable law.

18.   **Compliance**. It is the intention of Lender and Borrower to comply with applicable law.  In each and every instance. Lender's rights are limited by applicable law (to the extent that same may not be lawfully waived). construed so as to comply with applicable laws. and such rights may not be exercised except to the extent permitted by applicable law.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE.**

**"BORROWER":**
**Greenleaf Resources, Inc.**

By:_____
Edgar L. Vines. Jr.. President



## LEGAL DESCRIPTION

A 16.54 acre tract of land located in Section 63, Block N, G. & M.M.B. & A. Survey, Ward County, Texas, and being more particularly described as follows:

**BEGINNING** at a ½" iron rod with cap marked "RPLS 4983" set in the Easterly right-of-way line of State Highway 18 (right-of-way recorded in Volume 158, page 523, Deed Records), for the Southwest corner of this tract, from which the Southeast corner of said Section 63 bears S.5°00'45"W. 3530.1 feet and N.73°40'45"E. 4310.5 feet; (Bearings are compared to the Texas Coordinate System of 1983, Central Zone. Distances and area are surface.)

**THENCE** N.5°00'45"E., along said Easterly right-of-way line of State Highway 18, a distance of 875.2 feet to a ½" iron pipe with cap marked "TRUMAN GASKIN 630" found for the Northwest corner of this tract;

**THENCE** N.73°15'45"E. 871.2 feet to a ½" iron rod with cap marked "RPLS 4983" set for the Northeast corner of this tract;

**THENCE** S.5°00'45"W. 904.2 feet to a ½" iron rod with cap marked "RPLS 4983" set for the Southeast corner of this tract;

**THENCE** S.75°03'50"W. 860.8 feet to the **PLACE OF BEGINNING.**

EXHIBIT "A"

# SECURITY AGREEMENT

Date: June 2, 2015

Debtor: Greenleaf Resources, Inc., a Mississippi corporation
Debtor's Mailing Address: 313 Telly Road, Picayune, Mississippi 39466

Secured Party: Gillespie Partners, Ltd., a Texas limited partnership
Secured Party's Mailing Address: P.O. Box 631107, Nacogdoches, Texas 75963

Classification of Collateral: All equipment of Debtor.

Collateral (including all accessions): All Debtor's interest in the equipment (including the proceeds thereof in what ever form) located on that tract or parcels of land in Ward County, Texas, located at 4712 State Hwy 18 South, Monahans, Texas which is described in Exhibit A which is attached hereto and incorporated herein by reference, as well as all after acquired collateral of the same classification.

Debtor's Representations Concerning Location of Collateral : The Collateral will be located at 4712 State Hwy 18 South, in Monahans, Ward County, Texas.

Obligation
        Commercial Promissory Note
                Date: June 2, 2015
                Amount: $700,000.00
                Maker: Greenleaf Resources, Inc..
                Payee: Gillespie Partners, Ltd.
                Final Maturity Date: June 2, 2016

      Subject to the terms of this agreement Debtor grants to Secured Party a security interest in the collateral and all its proceeds to secure payment and performance of Debtor's obligation in this security agreement and all renewals and extensions of any of the obligation.

## Debtor's Warranties

      1. <u>Financing Statement.</u>  Except for that in favor of Secured Party, no financing statement covering the collateral is filed in any public office other than that filing by Sabine State Bank & Trust Company which may be applicable thereto, said  financing statement being on file in the office of the Texas secretary of state under No. 12-0032408545.

      2. <u>Ownership.</u>  Debtor owns the collateral and has the authority to grant this security interest. Ownership is free from any setoff, claim, restriction, lien, security interest, or encumbrance except this security interest and liens for taxes not yet due.

1

3. <u>Fixtures and Accessions.</u>  None of the collateral is affixed to real estate, is an accession to any goods, is commingled with other goods, or will become a fixture, accession or part of a product or mass with other goods except as expressly provided in this agreement.

4. <u>Financial Statements.</u>  All information about Debtor's financial condition provided to secured Party was accurate when submitted, as will be any information subsequently provided.

**Debtor's Covenants**

1. <u>Protection of Collateral.</u>  Debtor will defend the collateral against all claims and demands adverse to Secured Party's interest in it and will keep it free from all liens except those for taxes not yet due and from all security interests except this one.  The collateral will remain in Debtor's possession or control at all times, except as otherwise provided in this agreement. Debtor will maintain the collateral in good condition and protect it against misuse, abuse, waste, and deterioration except for ordinary wear and tear resulting from its intended use.

2. <u>Insurance.</u>  Debtor will insure the collateral in accord with Secured Party's reasonable requirements regarding choice of carrier, casualties insured against, and amount of coverage. Policies will be written in favor of Debtor and Secured Party according to their respective interest or according to Secured Party's other requirements.  All policies will provide that Secured Party will receive at least ten days' notice before cancellation, and the policies or certificates evidencing them will be provided to Secured Party when issued.  Debtor assumes all risk of loss and damage to the collateral to the extent of any deficiency in insurance coverage. Debtor irrevocably appoints Secured Party as attorney-in-fact to collect and return, unearned premiums, and proceeds of any insurance on the collateral and to endorse any draft or check deriving from the policies and made payable to Debtor.

3. <u>Secured Party's Cost.</u>  Debtor will pay all expenses incurred by Secured Party in obtaining, preserving, perfecting, defending and enforcing this security interest or the collateral and in collecting or enforcing the note.  Expenses for which Debtor is liable include, but are not limited to, taxes, assessments, reasonable attorney's fees, and other legal expenses.  These expenses will bear interest from the date of payments at the highest rate stated in notes that are part of the obligation, and Debtor will pay Secured Party this interest on demand at a time and place reasonably specified by Secured Party.  These expenses and interest will be part of the obligation and will be recoverable as such in all respects.

4. <u>Additional Documents.</u>  Debtor will sign any papers that Secured Party considers necessary to obtain, maintain, and perfect this security interest or to comply with any relevant law.

5. <u>Notice of Changes.</u>  Debtor will immediately notify Secured Party of any material change in the collateral; change in Debtor's name, address, or location; change in any matter warranted or represented in this agreement; change that may affect this security interest; and any event of default.

6. <u>Use and Removal of Collateral.</u> Debtor will use the collateral primarily according to the stated classification unless Secured Party consents otherwise in writing. Debtor will not permit the collateral to be affixed to any real estate, to become an accession to any goods, to be commingled with other goods, or to become a fixture, accession, or part of a product or mass with other goods except as expressly provided in this agreement.

7. <u>Sale.</u> Debtor will not sell, transfer, or encumber any of the collateral without the prior written consent of Secured Party.

## Rights and Remedies of Secured Party

1. <u>Generally.</u> Secured Party may exercise the following rights and remedies either before or after default:

> a. take control of any proceeds of the collateral;
>
> b. release any collateral in Secured party's possession to any debtor, temporarily or otherwise;
>
> c. take control of any funds generated by the collateral, such as refunds from and proceeds of insurance, and reduce any part of the obligation accordingly or permit Debtor to use such funds to repair or replace damaged or destroyed collateral covered by insurance; and
>
> d. demand, collect, convert, redeem, settle, compromise, receipt for, realize on, sue for, and adjust the collateral either in Secured Party's or Debtor's name, as Secured Party desires.

2. <u>Insurance.</u> If Debtor fails to maintain insurance as required by this agreement or otherwise by Secured Party, then Secured Party may purchase single-interest insurance coverage that will protect only Secured Party. If Secured Party purchases this insurance, its premiums will become a part of the obligation.

## Events of Default

Each of the following conditions is an event of default:

1. if Debtor defaults in timely payment or performance of any obligation, covenant, or liability in any written agreement between Debtor and Secured Party or in any other transaction secured by this agreement;

2. if any warranty, covenant, or representation made to Secured Party by or on behalf of Debtor proves to have been false in any material respect when made;

3. if a receiver is appointed for Debtor or any of the collateral;

4. if the collateral is assigned for the benefit of creditors or, to the extent permitted by law, if bankruptcy or insolvency proceedings commence against or by any of these parties: Debtor; any partnership of which Debtor is a general partner; and any maker, drawer, acceptor, endorser, guarantor, surety, accommodation party, or other person liable on or for any part of the obligation;

3

5. if any financing statement regarding the collateral but not related to this security interest and not favoring Secured Party is filed;

6. if any lien attaches to any of the collateral; and

7. if any of the collateral is lost, stolen, damaged, or destroyed, unless it is promptly replaced with collateral of like quality or restored to its former condition.

## Remedies of Secured Party on Default

During the existence of any event of default, Secured Party may declare the unpaid principal and earned interest of the obligation immediately due in whole or part, enforce the obligation, and exercise any rights and remedies grated by chapter 9 of the Texas Business and Commerce Code or by this agreement, including the following:

1. require Debtor to deliver to Secured Party all books and records relating to the collateral;

2. require Debtor to assemble the collateral and make it available to Secured Party at a place reasonably convenient to both parties;

3. take possession of any of the collateral and for this purpose enter any premises where it is located if this can be done without breach of the peace;

4. sell, lease, or otherwise dispose of any of the collateral in accord with the rights, remedies, and duties of a secured party under chapters 2 and 9 of the Texas Business and Commerce Code after giving notice as required by those chapters; unless the collateral threatens to decline speedily in value, is perishable, or would typically be sold on a recognized market, Secured Party will give Debtor reasonable notice of any public sale of the collateral or of a time after which it may be otherwise disposed of without further notice to Debtor; in this event, notice will be deemed reasonable if it is mailed, postage prepaid, to Debtor at the address specified in this agreement at least ten days before any public sale or ten days before the time when the collateral may be otherwise disposed of without further notice to Debtor;

5. surrender any insurance policies covering the collateral and receive the unearned premium;

6. apply any proceeds from disposition of the collateral after default in the manner specified in chapter 9 of the Texas Business and Commerce Code, including payment of Secured Party's reasonable attorney's fees and court expense; and

7. if disposition of the collateral leaves the obligation unsatisfied, collect the deficiency from Debtor.

## General Provisions

1. <u>Parties Bound.</u> Secured Party's rights under this agreement shall inure to the benefit of its successors and assigns. Assignment of any part of the obligation and delivery by Secured Party of any party of the collateral will fully discharge Secured Party from responsibility for that part of the collateral. If Debtor is more than one, all their representations, warranties, and agreements are joint and several. Debtor's obligations under this agreement shall bind Debtor's personal representatives, successor, and assigns.

2. <u>Waiver.</u> Neither delay in exercise nor partial exercise of any of Secured Party's remedies

4

or rights shall waive further exercise of those remedies or rights. Secured Party's failure to exercise remedies or rights does not waive subsequent exercise of those remedies or rights. Secured Party's waiver of any default does not waive further default. Secured Party's waiver of any right in this agreement or of any default is binding only if it is in writing. Secured Party may remedy any default without waiving it.

3. <u>Reimbursement.</u> If Debtor fails to perform any of Debtor's obligations, Secured party may perform those obligations and be reimbursed by Debtor on demand at the place where the note is payable for any sums so paid, including attorney's fees and other legal expenses, plus interest on those sums from the dates of payment at the rate stated in the note for matured, unpaid amounts. The sum to be reimbursed shall be secured by this security agreement.

4. <u>Interest Rate.</u> Interest included in the obligation shall not exceed the maximum amount of non-usurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited to the principal of the obligation or, if that has been paid, refunded. On any acceleration or required or permitted prepayment of the obligation, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal amount of the obligation or, if the principal amount has been paid, refunded. this provision overrides other provisions in this and all other instruments concerning the obligation.

5. <u>Modifications.</u> No provisions of this agreement shall be modified or limited except by written agreement.

6. <u>Severability.</u> The unenforceability of any provisions of this agreement will not affect the enforceability or validity of any other provisions.

7. <u>After-Acquired Consumer Goods.</u> This security interest shall attach to after-acquired consumer goods only to the extent permitted by law.

8. <u>Applicable Law.</u> This agreement will be construed according to Texas laws.

9. <u>Place of performance.</u> This agreement is to be performed in the county of secured Party's mailing address.

10. <u>Financing Statement.</u> A carbon, photographic, or other reproduction of this agreement or any financing statement covering the collateral is sufficient as a financing statement.

11. <u>Presumption of Truth and Validity.</u> If the collateral is sold after default, recitals in the bill of sale or transfer will be prima facie evidence of their truth, and all prerequisites to the sale specified by this agreement and by chapter 9 of the Texas Business and Commerce Code will be presumed satisfied.

5

12. Gender, Singular and Plural. When the context requires, pronouns, nouns and terms as used in this instrument shall include the masculine, feminine, neuter, singular and plural forms thereof.

13. Priority of Security Interest. This security interest shall neither affect nor be affected by any other security for any of the obligation. Neither extensions of any of the obligation nor releases of any of the collateral will affect the priority or validity of this security interest with reference to any third person.

14. Cumulative Remedies. Foreclosure of this security interest by suit does not limit Secured Party's remedies, including the right to sell the collateral under the terms of this agreement. All remedies of Secured party may be exercised at the same or different times, and no remedy shall be a defense to any other. Secured Party's rights and remedies include all those grated by law or otherwise, in addition to those specified in this agreement.

15. Agency. Debtor's appointment of Secured Party as Debtor's agent is coupled with an interest and will survive any disability of Debtor.

DEBTOR:
GREENLEAF RESOURCES, INC.

By:_____
    Edgar L. Vines, Jr., President

GREENLEAF RESOURCES, INC.
OWNED EQUIPMENT
May 26, 2015



EXHIBIT "A"

| UNIT # | ARRANGEMENT RENT,OWN,RPO,RET,SOLD | YEAR | MAKE | COLOR | MODEL | DESCRIPTION | SERIAL NUMBER |
|---|---|---|---|---|---|---|---|
| 15 | OWNED | 1999 | MACK | WHITE | | DUMP TRUCK | 1M2AA13Y2XW108096 |
| 16 | OWNED | 1999 | MACK | WHITE | | DUMP TRUCK | 1M2AA13Y8XW109138 |
| 23 | OWNED | | ATLAS COPCO | | XAS 185 CFM | AIR COMPRESSOR | AC090035 |
| 24 | OWNED | 2014 | CARGO | | UT | 24 FT CARGO | 5NHUEH225FY067611 |
| 31 | OWNED | | CATERPILLAR | | 416C | BACK HOE | 04ZN03960 |
| 42 | OWNED | 2007 | CATERPILLAR | | D6T LGP | TRACK TYPE TRACTOR | KJL00501 |
| 43 | OWNED | 2014 | FLAT | | | SPOOL | 1J9BS1612EW401051 |
| 50 | OWNED | 2004 | CIRCLE M TRAILERS | | FB 30FT | GOOSENECK | 1C9GS252X4A634053 |
| 51 | OWNED | 2014 | COVERED WAGON TRAILERS | | CW7X16TA2 | ENCLOSED CARGO TRAILER | 53FBE1627EF01221 |
| 55 | OWNED | 2013 | HEFT | | | FB 33 FT GOOSENECK TRAILER | 5NKGU3324DP00715 |
| 66 | OWNED | 2004 | TM | | 234 FL | FL TRAILER GOOSENECK 40 FT | 5BEBF6294C133234 |
| 67 | OWNED | | TMP | | | TRAILER 20 FT BUMPER PULL | 13ZHP2023E1000985 |
| 71 | OWNED | 2007 | HORNET | | CM | CAMPER | 4YDT50B217T203433 |
| 72 | OWNED | 2002 | HORNET | | CT SPORT | 28 FT TRAVEL TRAILER | 4YDT2524273044650 |
| 90 | OWNED | 2000 | NOMAD | | XT | 5TH WHEEL TRAVEL TRAILER | 1SN300M26YC000998 |
| 94 | OWNED | 2014 | FLAT | | | 40 FT PIPE TRAILER | 1J9BP4021EW401055 |
| 95 | OWNED | | CATERPILLAR | | 320 CL | EXCAVATOR | PAB06005 |
| 98 | OWNED | | CATERPILLAR | | DSN LGP | DOZER | PA806005 |
| 131 | OWNED - BUTCH | | ZZ | | FIAT ALLIZ | FRONT END LOADER | 0AKD02015 |
| 133 | OWNED | | CATERPILLAR | | | AIR COMPRESSOR/SAND BLASTER | DGM40608 R130.2 |
| 135 | | | | | | MONAHANS YARD | |
| TOTAL | | | | | | | |
| RAIL TOTAL | | | | | | | |



# GUARANTY AGREEMENT

THIS GUARANTY ("Guaranty") is made as of **June 2, 2015**, by **Edgar L. Vines, Jr.** and **John F. White, Jr.** ("Guarantor" whether on or more), in favor of **Gillespie Partners, Ltd.**, a Texas limited partnership and its successors and assigns ("Lender"), with reference to the recitals set forth below.

## RECITALS:

A.    Lender has agreed to lend to **Greenleaf Resources, Inc.**, a Mississippi corporation ("Borrower"), the sum of **SEVEN HUNDRED THOUSAND AND NO/100 ($700,000.00) DOLLARS** (the "Loan") in accordance with the terms and provisions of a Promissory Note of even date herewith (the "Note"), to be secured by a Deed of Trust-Security Agreement-Financing Statement, a Commercial Security Agreement (the "Security Instruments") and other security instruments of even date herewith (the Note, the Security Instrument and all other documents executed by Borrower in connection with the Loan, are collectively called the "Loan Documents").

B.    As a condition precedent to making the Loan, Lender requires that Borrower obtain the execution of this Guaranty by Guarantor and Lender will be relying on the terms hereof in making the Loan.

C.    The making of the Loan by Lender to Borrower is of value to Guarantor, is reasonably expected to benefit Guarantor, directly or indirectly, and is in furtherance of Guarantor's personal and business interests.

In consideration of Lender making the Loan, and as an inducement to Lender to do so, Guarantor hereby agrees, warrants and covenants as follows:

1.    Guarantor hereby unconditionally, irrevocably and absolutely guarantees without demand by Lender the full and prompt payment when due, whether by acceleration or otherwise, of (a) the entire amount of principal and accrued interest under the Note, and (b) all other indebtedness, obligations and liabilities of Borrower under the Loan Documents, including, without limitation, all costs of collection, attorneys' fees, court costs, and other advances and extensions thereunder whether such indebtedness, obligations or liabilities have been incurred prior to the date hereof or are incurred from time to time hereafter and all without set-off, counterclaim, recoupment, or deduction of any amounts owing or alleged to be owing by Lender to Borrower. It is expressly understood that this Guaranty covers, without limitation, (y) any and all amendments, extensions, modifications, rearrangements and renewals of the Loan or any of the Loan Documents; and (z) all interest, default interest and other amounts that would have accrued under the Loan Documents but for the commencement of a case under the Federal Bankruptcy Code or any other similar federal or state law. Without limiting the foregoing, Guarantor specifically guarantees payment of any judgment entered against the Borrower and any damages that may be awarded in any action brought against the Borrower by Lender arising out of or relating to the Loan or any Loan Document. All of the indebtedness, obligations and liabilities described in this paragraph are referred to herein as the "Guaranteed Obligations." This Guaranty is a guaranty of payment and not merely of collection.

2.    This Guaranty shall take effect when received by Lender without the necessity of any acceptance by Lender or of any notice to Guarantor or to Borrower, shall be continuing and irrevocable, and shall remain in full force and effect until the Guaranteed Obligations are fully and finally paid. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Guaranteed Obligations and thereafter Lender is forced to remit, rescind or restore the amount of that payment under any federal or state bankruptcy law or law for the relief of debtors, or for any other reason, (a) the amount of such payment shall be considered to have been unpaid at all times for the purposes of enforcement of this Guaranty, (b) the obligations of Borrower guaranteed herein shall be automatically reinstated to the extent of such payment, and (c) Guarantor will, on demand, indemnify for and hold Lender harmless from all losses and all reasonable costs and expenses, including legal fees, incurred by Lender in connection with such remission, rescission or restoration. In the event this Guaranty is preceded or followed by any other agreement of suretyship or guaranty by the Guarantor or others, all shall be deemed to be cumulative, and the obligations of the Guarantor hereunder shall be in addition to those stated in any other suretyship or guaranty agreement.

06 CCORI Greene GUARANTY AGREEMENT

3.      The obligations of Guarantor hereunder are separate and independent of the obligations of Borrower. Guarantor expressly agrees that a separate action may be brought against Guarantor whether or not Borrower is joined in such action.

4.      Guarantor represents, warrants, and covenants to Lender that (a) the financial statements of Guarantor heretofore delivered to Lender are true and correct in all material respects and fairly present the financial condition of Guarantor as of the respective dates thereof, and no material adverse change has occurred in the financial condition of Guarantor since the date of the most recent of such financial statements; (b) Guarantor has derived or expects to derive financial and other advantages and benefits, directly or indirectly, from the making of this Guaranty and the Guaranteed Obligations; (c) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (d) this Guaranty is executed at Borrowers request and not at the request of Lender; (e) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; (f) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrowers financial condition; (g) Guarantor will keep adequately informed of any facts, events or circumstances which might in any way affect Guarantor's risks under this Guaranty; (h) Lender shall have no obligation to disclose to Guarantor any information or documents (financial or otherwise) heretofore or hereafter acquired by Lender in the course of its relationship with Borrower; and (i) Guarantor will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or take any other action which might reasonably be expected to have a material adverse effect to Guarantor's financial condition.

5.      The Guarantor hereby consents to all terms and conditions of agreements heretofore or hereafter made between Lender and the Borrower (including without limitation the Note and other Loan Documents) and further agrees that Lender may without further consent or disclosure and without affecting or releasing the obligations of Guarantor hereunder: (a) surrender, exchange, release, assign, or sell any collateral or waive, release, assign, sell, or subordinate any security interest, in whole or in part; (b) waive, delay the exercise of, release, compromise, or grant indulgences in respect of any rights or remedies of Lender against the Borrower or any surety or guarantor (including, without limitation, rights or remedies of Lender against Guarantor under this Guaranty); (c) waive or delay the exercise of any rights or remedies of Lender in respect of any collateral or security interest now or hereafter held; (d) renew, extend, waive, accelerate, or modify the terms of any Guaranteed Obligation or the obligations of any surety or guarantor, including, without limitation, changes to the rate of interest, or any instrument or agreement (including, without limitation, the Loan Documents) evidencing or relating to the same; (e) realize on any security interest, judicially or nonjudicially, with or without preservation of a deficiency judgment; (f) apply payments received from Borrower or any surety or guarantor (including Guarantor) or from any collateral, to any indebtedness, liability, or obligations of Borrower or such sureties or guarantors whether or not a Guaranteed Obligation hereunder; or (g) adjust, compromise or receive less than the amount due upon any collateral or the Guaranteed Obligations, and enter into any accord and satisfaction or novation agreement with respect to the same as Lender shall deem advisable.

6.      Guarantor waives notice of(a) Lenders acceptance of this Guaranty or its intention to act or its actions in reliance hereon; (b) the present existence or future incurring of any Guaranteed Obligations or any terms or amounts thereof or any change therein; (c) any default by the Borrower or any surety or guarantor; (d) the obtaining of any guaranty or surety agreement (in addition to this Guaranty); (e) the obtaining of any pledge, assignment or other security for any Guaranteed Obligations; (f) the release of the Borrower or any surety or guarantor; (g) the release of any collateral; (h) any change in Guarantor's business or financial condition; (i) any renewal, extension or modification of the terms of any Guaranteed Obligation or of the obligations or liabilities of any surety or guarantor or of any instruments or agreements evidencing the same; (j) any acts or omissions of Lender consented to in Section 5 hereof; and (k) any other demands or notices whatsoever with respect to the Guaranteed Obligations or this Guaranty. The Guarantor further waives notice of presentment, demand, protest, notice of nonpayment, notice of intent to accelerate, and notice of protest in relation to any instrument or agreement evidencing any Guaranteed Obligation.

7.    Guarantor expressly waives any and all rights to defenses arising by reason of (a) any "one-action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency against Guarantor, before or after Lenders commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (b) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Guaranteed Obligations; (c) any disability or other defense of Borrower, of any other Guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than full and final payment in legal tender of the Guaranteed Obligations; or (d) any right to claim discharge of the Guaranteed Obligations on the basis of unjustified impairment of any collateral for the Guaranteed Obligations. Guarantor further waives (a) to the extent permitted by law, the defense of any statute of limitations in any action to enforce this Guaranty and agrees that any part payment by Borrower or other circumstance which operates to toll any statute of limitations as to Borrower shall toll the statute of limitations as to Guarantor, (b) any right to cause a marshalling of Borrower's assets, (c) all exemptions and homestead laws, and (d) all rights of set-off and counterclaims. Guarantor agrees that Lender may proceed against any collateral securing the Guaranteed Obligations by way of either judicial or nonjudicial foreclosure. Guarantor understands that a nonjudicial foreclosure of any deed of trust or mortgage securing the Guaranteed Obligations could impair or eliminate any subrogation or reimbursement rights Guarantor may have against Borrower, nevertheless Guarantor hereby waives and relinquishes any defense based upon the loss of any such reimbursement or subrogation rights or any other defense which may otherwise arise therefrom and any defense that may arise out of election of remedies, discharge or satisfaction of the Guaranteed Obligations. In the event any such deed of trust or mortgage is foreclosed judicially or nonjudicially, Guarantor's liability under this Guaranty shall be that portion of the Guaranteed Obligations representing a deficiency resulting from a judicial or nonjudicial sale, i.e., the difference between the amount due and owing on the Guaranteed Obligations on the day of the foreclosure sale (including without limitation principal, accrued interest, attorneys' fees, late payments, if any, and costs of foreclosure) and the amount of the successful bid at any such judicial or nonjudicial foreclosure sale. Guarantor hereby waives the right to object to the amount which may be bid by Lender at such foreclosure sale.

**GUARANTOR WAIVES ALL RIGHTS AND DEFENSES ARISING OUT OF AN ELECTION OF REMEDIES BY LENDER OR ITS SUCCESSORS OR ASSIGNS, EVEN THOUGH THAT ELECTION OF REMEDIES, SUCH AS NONJUDICIAL FORECLOSURE WITH RESPECT TO SECURITY FOR A GUARANTEED OBLIGATION, HAS DESTROYED THE GUARANTOR'S RIGHTS OF SUBROGATION AND REIMBURSEMENT AGAINST THE PRINCIPAL BY STATUTE OR OTHERWISE.**

8.    No act of commission or omission of any kind or at any time on the part of Lender with respect to any matter whatsoever shall in any way affect or impair this Guaranty. Without limiting the foregoing, the obligations, covenants, agreements and duties of Guarantor under this Guaranty shall not be released or impaired in any manner whatsoever, without the written consent of Lender, on account of any or all of the following: (a) any act or omission of Lender consented to in Section 5 hereof; (b) the failure to receive any notice, demand, presentment or protest waived in Sections 4 and 6 hereof; (c) the occurrence of any event as to which Guarantor has provided its waiver under Section 7 hereof; (d) any failure by the Borrower or any other guarantor or surety to perform or comply with the Guaranteed Obligations or the terms of any instrument or agreement relating thereto; (e) any change in the name, purpose, capital stock or constitution of the Borrower or any other guarantor or surety; (f) any irregularity, defect or unauthorized action by Lender, Borrower or any other guarantor or surety or any of their respective officers, directors or other agents in executing and delivering any instrument or agreements relating to the Guaranteed Obligations or in carrying out or attempting to carry out the terms of any such agreements; (g) any receivership, insolvency, bankruptcy, reorganization or similar proceeding by or against Borrower, Lender, Guarantor or any other surety or guarantor; (h) any set-off, counterclaim, recoupment, deduction, defense or other right which Guarantor may have against Lender, Borrower or any other person for any reason whatsoever whether related to the Guaranteed Obligations or otherwise; (i) any assignment, endorsement or transfer, in whole

Page 3

06-0215RE/Greenleaf/GUARANTY AGREEMENT

or in part, of the Guaranteed Obligations, whether made with or without notice to or the consent of Guarantor; (j) the voluntary or involuntary liquidation, sale or other disposition of all or substantially all of the assets of Borrower or any guarantor; (k) the acceptance of additional or substitute property as security for or any additional guaranty as surety for any Guaranteed Obligation; (l) the operation of law or any other cause, whether similar or dissimilar to the foregoing; (m) the failure by Lender to file or enforce a claim against the estate (either in administration, bankruptcy or other proceeding) of Borrower or any other person or entity (including, without limitation, any guarantor); (n) if the recovery from Borrower or any other person or entity (including, without limitation, any other guarantor) becomes barred by any statute of limitations or is otherwise prevented; (o) any impairment, modification, change, release or limitation of liability of, or stay of actions of lien enforcement proceedings against Borrower, Borrower's property, or its estate in bankruptcy resulting from the operation of any present or future provision of the Federal Bankruptcy Code or any other similar federal or state statute, or from the decision of any court; or (p) any neglect, delay, omission, failure or refusal of Lender to take or prosecute any action for the collection of any of the Guaranteed Obligations or to foreclose or take or prosecute any action in connection with any lien or right of security (including perfection thereof) existing or to exist in connection with, or as security for, any of the Guaranteed Obligations, it being the intention hereof that Guarantor shall remain liable as a principal on the Guaranteed Obligations notwithstanding any act, omission or event which might, but for the provisions hereof, otherwise operate as a legal or equitable discharge of Guarantor. Guarantor hereby waives all defenses of a surety to which it may be entitled by statute or otherwise.

9.     Guarantor acknowledges that Lender intends to obtain other guaranties and collateral to secure the repayment of the Guaranteed Obligations. Guarantor represents and warrants to Lender, however, that in making this Guaranty it is not relying upon the Lender's obtaining any guaranty agreements (other than this Guaranty) or any collateral pledged or assigned to secure repayment of the Guaranteed Obligations. Guarantor specifically acknowledges that Lender's obtaining any such guaranty agreements or collateral is not a condition to the enforcement of this Guaranty. If Lender should simultaneously or hereafter elect to attempt to take additional guaranty agreements or collateral to secure repayment of the Guaranteed Obligations and if its efforts to do so should fail in any respect including, without limitation, a determination that the agreement purporting to provide such additional guaranty or security interest is invalid or unenforceable for any reason, this Guaranty shall, nonetheless, remain in full force and effect.

10.     Guarantor hereby irrevocably waives all claims it has or may acquire against Borrower in respect of the Guaranteed Obligations, including rights of exoneration, reimbursement and subrogation. Guarantor has received no indemnification or other agreement of reimbursement from Borrower in connection with the execution and delivery of this Guaranty.

11.     This Guaranty shall inure to the benefit of Lender, and Lender's successors and assigns, and shall be binding upon Guarantor and his heirs, personal or legal representatives, administrators, executors, successors and assigns. Lender may, without any notice whatsoever to Guarantor, or to anyone else, sell, assign or transfer the Note, with or without any security therefor, and in that event each and every immediate and successive assignee, transferee or holder of all or any part of the Loan and the Note shall have the right to enforce this Guaranty, by suit or otherwise, for the benefit of such assignee, transferee or holder as though such parties were herein by name specifically given those rights, powers and benefits.

12.     Guarantor agrees to pay all costs and expenses which may be incurred by Lender in the enforcement or interpretation of this Guaranty, including reasonable attorneys' fees (to be determined by the court and not by a jury), and including all costs and reasonable attorneys' fees incurred in any bankruptcy or insolvency proceeding or on appeal to one or more appellate courts.

13.     This Guaranty shall be governed by and construed and enforced under the laws of the State of Texas (excluding its choice of law principles).

14.     No delay on the part of Lender in exercising any right, power or privilege under this Guaranty shall operate as a waiver of any such right, power or privilege, nor shall any exercise or waiver of any privilege or right preclude any other or further exercise of such privilege or right or the exercise of any other

right, power or privilege. All of Lender's rights and remedies shall be cumulative. In the event Lender in its sole discretion elects to give notice of any action with respect to the sale of collateral, if any, securing the Guaranteed Obligations or any part thereof, Guarantor agrees that ten (10) days prior written notice shall be deemed reasonable notice of any matters contained in such notice.

15.     Any indebtedness of Borrower now or hereafter held by Guarantor is hereby subordinated to the Guaranteed Obligations. If Lender so requests, such indebtedness of Borrower to Guarantor shall be collected, enforced and received by Guarantor in trust for Lender, and be paid over to Lender on account of the Guaranteed Obligations, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty. Guarantor shall file all claims against Borrower in any bankruptcy or other proceeding in which the filing of claims is required by law upon any indebtedness of Borrower to Guarantor and will assign to Lender all rights of Guarantor thereunder. If Guarantor does not file any such claim, Guarantor hereby appoints and constitutes Lender as Guarantor's attorney-in-fact and hereby authorizes Lender to do so in the name of Guarantor or, in Lender's discretion, to assign the claim and to cause the claim to be filed in the name of Lender's nominee. In all such cases, whether in administration, bankruptcy or otherwise, the person or persons authorized to pay such claim shall pay to Lender the full amount thereof, and Guarantor hereby assigns to Lender, to the full extent necessary for that purpose, all of Guarantor's rights to any such payments or distributions to which Guarantor would otherwise be entitled. Nothing in this paragraph shall be construed to create a duty in Lender to take any action whatsoever to protect any right Guarantor may have as to Borrower.

16.     If any provision of this Guaranty or any portion of any provision of this Guaranty shall be deemed to be invalid, illegal or unenforceable, such invalidity, illegality or unenforceability shall not alter the remaining portion of such provision, or any other provision hereof, as each provision of this Guaranty shall be deemed severable from all other provisions hereof.

17.     This Guaranty shall be so construed that, wherever applicable, the use of the singular number shall include the plural number, the use of the plural number shall include the singular number, and the use of any gender shall be applicable to all genders, and shall likewise be so construed as applicable to and including a corporation, partnership, or other entity. Each married individual who executes this Guaranty intends to bind both his or her separate estate and the jointly held or community estate of that married individual and his or her spouse. If this Guaranty is executed by more than one person or entity, the obligations of each Guarantor hereunder shall be joint and several and this Guaranty shall apply to each of the individuals or entities comprising Guarantor as if each had executed a separate guaranty. Each Guarantor agrees that Lender, in its discretion, may (i) bring suit against all Guarantors jointly and severally or against any one or more of them, (ii) compromise or settle with any one or more of Guarantors for such consideration as Lender may deem proper, and (iii) release any one or more of Guarantors from liability hereunder, and that no such action shall impair the rights of Lender to collect the Guaranteed Obligations (or the unpaid balance thereof) from the other Guarantors not so sued, settled with or released.

18.     All agreements between Guarantor and Lender, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand or acceleration of the final maturity of the Loan or otherwise, shall the interest contracted for, charged, received, paid or agreed to be paid to Lender under or in connection with the Loan exceed the maximum amount permissible under applicable law. All interest paid or agreed to be paid to Lender shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period (including any renewal or extension) until payment in full of the principal balance of the Loan so that the interest hereon for such full period shall not exceed the maximum amount permissible under applicable law. Lender expressly disavows any intent to contract for, charge or receive interest in an amount which exceeds the maximum amount permissible under applicable law. This paragraph shall control all agreements between Guarantor and Lender.

19.     For the convenience of the parties hereto, this Guaranty has been prepared for execution by multiple parties, each of which is a Guarantor for all purposes hereunder. Each of the parties signing this Guaranty hereby represents, warrants and covenants for the benefit of Lender that it is the intention of such

GUARANTY AGREEMENT

party that this Guaranty be fully enforceable against each signatory in accordance with its terms to the same extent as if such party had been the only party identified as a "Guarantor" hereunder and had executed a separate Guaranty (in the form hereof) in favor of Lender. Each of the parties signing this document expressly confirms that in making this Guaranty such party is not relying upon Lender obtaining signatures from any of the other parties identified as a "Guarantor" herein. Each party signing this Guaranty expressly agrees that the failure by one or more of the other parties identified as "Guarantors" herein to sign this Guaranty shall not prevent the full enforcement of this Guaranty against each party who has signed the Guaranty.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the date written above.

GUARANTOR:

_____
Edgar L. Vines, Jr.

_____
John F. White, Jr.

06.0215RB/Greenleaf/GUARANTY.AGREEMENT

party that this Guaranty be fully enforceable against each signatory in accordance with its terms to the same extent as if such party had been the only party identified as a "Guarantor" hereunder and had executed a separate Guaranty (in the form hereof) in favor of Lender. Each of the parties signing this document expressly confirms that in making this Guaranty such party is not relying upon Lender obtaining signatures from any of the other parties identified as a "Guarantor" herein. Each party signing this Guaranty expressly agrees that the failure by one or more of the other parties identified as "Guarantors" herein to sign this Guaranty shall not prevent the full enforcement of this Guaranty against each party who has signed the Guaranty.

20.   This Guaranty Agreement may be executed in a number of identical counterparts and each signed original counterpart will be an original and all signed original counterparts will, collectively, constitute one document. Electronically transmitted (email or fax) signed identical counterpart copies of this Guaranty Agreement signed by a Guarantor shall have the same force and effect as signed original counterpart and may be relied upon as such by the Lender.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the date written above.

GUARANTOR:

Edgar L. Vines, Jr.

John F. White, Jr.

Page 6