UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

|  |  |  |
|---|---|---|
| JOHN WHITE, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 9:24-CV-00085-MJT |
| v. | ) ) ) | |
| LLOYD GILLESPIE | ) ) | |
| Defendant. | | |

**MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM AND INCORPORATED MEMORANDUM IN SUPPORT**

Plaintiff John White (hereinafter, "White") respectfully files this Motion to Dismiss and Incorporated Memorandum in Support and asks this Court to dismiss the Counterclaim filed by Defendant Lloyd Gillespie (hereinafter, "Defendant" or "Gillespie"). The Counterclaim must be dismissed in its entirety under Fed. R. Civ. Proc. 12(b)(1) for lack of subject matter jurisdiction because Defendant, in his individual capacity, lacks standing to assert a Counterclaim on behalf of non-party Gillespie Partners, Ltd. arising out of a purported debt owed to Gillespie Partners.

For these reasons, as discussed more fully below, Defendant's Counterclaim must be dismissed.

1

I.  FACTUAL BACKGROUND

Plaintiff White purchased equipment from Greenleaf Resources, Inc. (hereinafter, "Greenleaf") pursuant to a Bill of Sale dated September 5, 2017.[1] Three pieces of the purchased equipment listed below (hereinafter, the "Converted Equipment") form the heart of the instant dispute:[2]

| MANUFACTURER | DESCRIPTION | YEAR/MODEL | SERIAL NUMBER |
|---|---|---|---|
| Caterpillar | Unit #36 CP 56 Roller | 2013 | 0C5P00680 |
| Caterpillar | Unit #41 D6T XWVP | 2013 | CAT00D6TCRCW01165 |
| Caterpillar | Unit #40 D6T | 2013 | 0GMK00555 |

Plaintiff purchased the Converted Equipment, along with other equipment, with the proceeds of a loan from Texas State Bank (hereinafter, "TSB"), and TSB secured its loan by using the Converted Equipment as collateral.[3] As part of the TSB loan, TSB filed UCC financing statements in the public records reflecting the loan of funds to purchase the Converted Equipment.[4] Importantly, before Plaintiff White purchased the Converted Equipment from Greenleaf, both TSB and White's attorney ran lien searches to determine if there were any existing liens on the Converted Equipment. TSB and White's attorney ran these lien searches in Mississippi because Greenleaf is a Mississippi corporation, and the well-established law provides that financing statements relating to a registered corporation must be filed in the state in which the corporation is incorporated.[5] Defendant does not allege, nor can he, that he filed the financing statement with

---

[1] Complaint at ¶8. *See also* September 5, 2017, Bill of Sale, attached hereto as Exhibit 1 (also attached as Exhibit "A" to the Complaint).

[2] *Id.* at ¶9.

[3] *Id.* at ¶9.

[4] *Id.* at ¶9. *See also* UCC Financing Statements filed by Texas State Bank, attached hereto as Exhibit 2 (also attached as Exhibit "B" to the Complaint).

[5] *See* Miss. Code Ann. § 75-9-307(e) (2024); UCC Revised Article 9 Customer Filing Guide, Secretary of State, State of Mississippi (Dec. 2001), *available at* https://www.sos.ms.gov/content/documents/Business/ucc/RA9_Filing_Guide.pdf (last visited July 24, 2024); Tex. Bus. & Com. Code § 9.307 (West 2013); Information on the Texas Business and Commerce

the State of Mississippi. As such, those lien searches revealed no properly filed Mississippi liens by Defendant or Gillespie Partners.[6]

During the time that Greenleaf owned the Converted Equipment, Greenleaf had financed the equipment with a loan from Caterpillar Financial Services Corporation (hereinafter, "Caterpillar").[7] Caterpillar's liens were revealed during Plaintiff's lien search, and as part of Plaintiff White's purchase of the Converted Equipment, Plaintiff obtained payoff amounts from Caterpillar and paid off the outstanding debt owed by Greenleaf to Caterpillar on the Converted Equipment.[8] As such, any liens and/or other rights that were held by Caterpillar with respect to the Converted Equipment at that time were extinguished when Plaintiff paid off the outstanding debt.[9] Plaintiff initially leased the Converted Equipment back to Greenleaf for its use, but when Greenleaf ceased operations in 2021, Plaintiff took back possession of the Converted Equipment and stored the Converted Equipment at a timber farm located near Zavalla, Texas.[10]

Plaintiff alleges that on or around April or May 2022, Defendant Gillespie, either personally or through persons acting on his behalf and direction, traveled to the Zavalla timber farm, removed the Converted Equipment from the timber farm, and transported the equipment to a location chosen by the Defendant.[11] In its Second Amended Answer and Counterclaim (its third proposed response to Plaintiff's Complaint), Defendant denies these allegations, yet Defendant *openly admits* that "Gillespie Partners, Ltd. [a company for which Defendant is the general

---

Code, Texas Secretary of State TX SOS, *available at* https://www.sos.state.tx.us/ucc/tbc-code.shtml (last visited July 1, 2024).

[6] *See* 2017 lien search results, attached hereto as Exhibit 3.

[7] Complaint at ¶10.

[8] *Id.* at ¶¶10-11. *See also* Caterpillar Payoff Statements, attached hereto as Exhibit 4 (also attached as Exhibit "C" to the Complaint).

[9] Complaint at ¶11.

[10] *Id.* at ¶12.

[11] *Id.* at ¶13.

3895641v1

partner] took possession of the Caterpillar Unit #36 CP Roller with Serial Number 0C5P00680 and the Caterpillar Unit #40 D6T with Serial Number 0GMK00555."[12] Defendant also admits in his Second Amended Answer and Counterclaim that "the equipment with Serial Nos. 0C5P00680 and 0GMK00555 were sold at the Ritchie Bros auction on June 16, 2021…."[13]

Importantly, Defendant provided no notice of the conversion or the sale of the equipment to Plaintiff nor TSB at the time or prior to selling the equipment, even though Texas law is explicitly clear that a creditor needs to provide notice before it sells or otherwise disposes of collateral.[14] Defendant Gillespie has not alleged that he employed any of the required steps for properly seizing property under Texas law, nor has he alleged that he followed proper procedure for giving Plaintiff White notice of his intent to sell the seized property. Instead, he personally, or through persons acting on his behalf and at his direction, travelled to the Zavalla timber farm and illegally removed the Converted Equipment, and then proceeded to sell the equipment at auction without giving Plaintiff White required notice to protect his collateral.[15]

Nevertheless, shortly after Plaintiff discovered Defendant's conversion in 2022, Plaintiff contacted the Defendant through counsel to inform Defendant that Plaintiff was aware Defendant had taken the Converted Equipment.[16] Defendant, through his counsel, claimed that his company Gillespie Partners had acquired a lien on White's assets from a prior lending arrangement with Greenleaf, which was the alleged justification for the seizure of the Converted Equipment.[17]

---

[12] *See* Defendant's Second Amended Answer at Rec. Doc. 12-1 at p. 2, ¶13.
[13] *Id*. at p. 5, ¶ 31.
[14] *See* Texas UCC §§9-610, 9-611.
[15] Complaint at ¶13. Plaintiff asserts that any Counterclaim that Gillespie had is extinguished by his own improper "self-help" seizure and subsequent sale of the Plaintiff's machinery, and Gillespie is also liable for damages in the amount of any loss caused by such failure to comply. *See* Texas UCC §9-625
[16] Complaint at ¶ 14.
[17] *Id.* at 16.

4
3895641v1

Gillespie's attorney further explained that on June 2, 2015, Greenleaf had given a Security Agreement to Gillespie Partners to secure a $700,000 Commercial Promissory Note from Greenleaf payable to Gillespie Partners. The collateral listed in that Security Agreement was "all equipment of debtor," which purportedly includes the Converted Equipment that Greenleaf subsequently sold to White in 2017. That note was guaranteed by Plaintiff White. Gillespie has produced three documents that purport to demonstrate the alleged lien against White's Converted Equipment: a Commercial Promissory Note,[18] a Security Agreement,[19] and a Guaranty Agreement.[20] Gillespie asserts that Plaintiff also guaranteed a separate $300,000 Commercial Promissory Note from Greenleaf payable to Gillespie Partners.[21]

Gillespie provided these four loan documents to the Court in support of his Affirmative Defenses and Counterclaim at ¶29.[22] What he does not reference, however, is the Release executed by Gillespie Partners, Ltd. on July 2, 2018, under which Gillespie Partners agreed, among other things, that (i) all obligations of Borrower to Lender under the Notes shall have been paid in full; (ii) Borrower would be released from any and all obligations under the Notes; (iii) each Guarantor shall be released and discharged from any and all obligations under the Guaranties; and (iv) all liens, pledges, charges, security interests and other encumbrances granted by Borrower in favor of

---

[18] *See* June 2, 2015, Commercial Promissory Note, attached hereto as Exhibit 5 (also attached as part of *in globo* Ex. "A" to the First Amended Answer).

[19] *See* June 2, 2015, Security Agreement, attached hereto as Exhibit 6 (also attached as part of *in globo* Ex. "A" to the First Amended Answer).

[20] *See* June 2, 2015, Guaranty Agreement, attached hereto as Exhibit 7 (also attached as part of *in globo* Ex. "A" to the First Amended Answer).

[21] Second Amended Answer at ¶29. *See also* May 11, 2016, Commercial Promissory Note, attached hereto as Exhibit 8 (also attached as part of *in globo* Ex. "A" to the First Amended Answer).

[22] *See* First Amended Answer at ¶29.

Lender under the Loan Documents shall be unconditionally and irrevocably terminated and released.[23]

In fact, Gillespie failed to provide this Court with additional documents that highlight the loan and guarantee history between *Gillespie Partners* (not Defendant) and Plaintiff, including:

- A UCC Financing Statement dated June 11, 2015, filed by Gillespie Partners as the secured party, which identifies the collateral subject to the lien and includes as Exhibit A listing said equipment;[24]

- A Commercial Promissory Note dated July 3, 2018, in the amount of $144,000 between Greenleaf and Gillespie Partners;[25]

- A Deed of Trust dated July 3, 2018, which reflects that the $144,000 loan by Gillespie Partners was secured by 16.54 acres of land in Ward County, Texas;[26]

- A Promissory Note dated May 1, 2020, which reflects a new $191,870 note between DF Contractors, LLC and Gillespie Partners that replaced the $144,000 note and that is secured by the same 16.54 acres of land referenced in the above $144,000 note;[27]

- A Deed in Lieu of Foreclosure dated September 2, 2020, reflecting that Gillespie Partners released the borrower of the $191,870 note (which, again, replaced the $144,000 note) from all liability for the indebtedness and obligations under the May 1, 2020, Promissory Note in exchange for Gillespie Partners taking ownership of the 16.54 acres.[28]

Importantly, all of these loan documents – and the Release – include non-party Gillespie Partners as the lender and party in interest, not Defendant Gillespie.

Plaintiff has made numerous amicable demands for the return of the Converted Equipment, or in the alternative, for payment of the market value of the Converted Equipment at the time that it was wrongly taken to resolve this dispute, which Plaintiff currently values at $400,000.[29] To

---

[23] *See* July 2, 2018, Release and Termination, attached hereto as Exhibit 9.
[24] *See* June 11, 2015, UCC Financing Statement, attached hereto as Exhibit 10.
[25] *See* July 3, 2018, Commercial Promissory Note, attached hereto as Exhibit 11.
[26] *See* July 3, 2018, Deed of Trust, attached hereto as Exhibit 12.
[27] *See* May 1, 2020, Promissory Note, attached hereto as Exhibit 13.
[28] *See* Sept. 2, 2020, Deed in Lieu of Foreclosure, attached hereto as Exhibit 14.
[29] Complaint at ¶ 7, 15.

date, Defendant has failed and/or refused to return the Converted Equipment or to pay the market value to Plaintiff.[30] As such, Defendant's actions amount to conversion and/or breach of contract under Texas law. On April 30, 2024, Plaintiff filed the instant suit seeking damages for Defendant's illegal conversion of the Converted Equipment. On June 4, 2024, Defendant Gillespie filed its Original Answer, which includes a Counterclaim against Plaintiff "for all unpaid sums guaranteed by Plaintiff arising out of the Guaranty" in favor of non-party Gillespie Partners discussed in the Affirmative Defenses. Defendant Gillespie subsequently filed a First Amended Answer on June 24, 2024, and then filed a Second Amended Answer and Counterclaim on July 3, 2024.

## II.  MOTION TO DISMISS UNDER FED. R. CIV. PRO. 12(b)(1)

### A. <u>Legal Standard</u>

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing Fed. R. Civ. P. 12(b)(1)). Subject matter jurisdiction is limited to actual "cases and controversies" as required under Article III of the Constitution, and "[c]onstitutional standing, which is a plaintiff's personal stake in the outcome of the case, is an essential and unchanging part of the case-or-controversy requirement." *Long v. Cat Exteriors*, No. SA-22-CV-00923-JKP, 2022 WL 17744052, at *1 (W.D. Tex. Dec. 15, 2022) (internal citations and quotations omitted). "Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). To establish standing, the plaintiff must demonstrate: 1) injury in fact; 2) a causal connection between the injury and the Defendant's

---

[30] Complaint at ¶¶ 7, 15, 21.

conduct; and 3) that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). "At a minimum, Article III requires that 'the plaintiff personally suffered some actual or threatened injury that can fairly be traced to the challenged action and is redressable by the courts.'" *ART Midwest, Inc. v. Clapper*, 99-2355, 2009 WL 10646744, at *5 (N.D. Tex. Sept. 22, 2009), *aff'd sub nom. Art Midwest Inc. v. Atl. Ltd. P'ship XII*, 742 F.3d 206 (5th Cir. 2014) (quoting *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 496 (5th Cir. 2007)). In addition, "'a plaintiff generally may not rest his claim to relief on the legal rights of third parties even if he has alleged injury sufficient to satisfy article III.'" *Id.* (quoting *Ensley v. Cody Res., Inc.*, 171 F.3d 315, 319 (5th Cir. 1999)).

When examining a Rule 12(b)(1) challenge, a Court must consider whether the attack on the claim is facial or factual. As the Fifth Circuit Court of Appeals explained in *Cell Sci. Sys. Corp. v. Louisiana Health Serv.*, 804 F. App'x 260, 263 (5th Cir. 2020):

> A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. A 'factual attack,' however, challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.

Defendant, as counterclaimant, bears the burden of proof to demonstrate the Court's jurisdiction over its claim since it is the party invoking the Court's jurisdiction to hear the Counterclaim. *Menchaca v. Crysler Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

### B. <u>Argument</u>

Defendant Gillespie has attempted to assert a "counterclaim" under Rule 13 of the Federal Rules of Civil Procedure against Plaintiff White. A Counterclaim is a claim that an existing *defendant* has against an existing *plaintiff. See, e.g., W. Coast Tanneries, Ltd. v. Anglo-Am. Hides Co*, 20 F.R.D. 166, 168 (S.D.N.Y. 1957) (citing FED. R. CIV. P. 13) ("A compulsory counterclaim

is *any claim that a defendant has against a plaintiff* which 'arises out of the transaction or occurrence that is the subject matter of the [plaintiff's] claim, [and] ….[a] permissive counterclaim, on the other hand, is *any claim a defendant has against a plaintiff* which does not arise 'out of the transaction or occurrence that is the subject matter of the [plaintiff's] claim."). But Defendant Gillespie has not asserted his own claim against Plaintiff White; rather, Defendant Gillespie has attempted to assert a claim on behalf of his affiliated entity, non-party Gillespie Partners.

Defendant has asserted a Counterclaim against the Plaintiff, stating that "Defendant, as General Partner of Gillespie Partners, Ltd. seeks judgment against Plaintiff for all unpaid sums guaranteed by Plaintiff arising out of the Guaranty" discussed in the Defendant's Affirmative Defenses.[31] In support of this Counterclaim, Defendant provided this Court with four loan documents, attached herein as Exhibits 5-8, that purport to reflect a current security interest that Gillespie Partners has in the Converted Equipment, which Defendant argues justified his "self-help" seizure and subsequent sale of the equipment. As noted above, Defendant omitted another related loan document, namely the Release that Gillespie Partners executed on July 2, 2018, attached herein as Exhibit 9, and Defendant further failed to provide the Court with additional loan documents that demonstrate that Defendant's Counterclaim is really a claim that must be asserted by non-party Gillespie Partners, attached herein as Exhibits 10-14. Importantly, all of these related loan documents reflect Gillespie Partners as the "Lender" and party in interest, not Defendant Gillespie.

Defendant Gillespie was sued in his individual capacity by Plaintiff. Plaintiff did not assert any claims against Gillespie Partners, and Gillespie Partners is not a party to this lawsuit. To have standing to assert the Counterclaim, Defendant Gillespie must demonstrate that he has suffered an

---

[31] *See* Defendant's Original Answer at ¶33.

9
3895641v1

"injury in fact," but the injury of which Gillespie complains – if it did, in fact, exist – would belong to Gillespie Partners since that entity holds the alleged security interest in the Converted Equipment. As such, this Court should grant the Plaintiff's motion because Defendant Gillespie in his individual capacity does not have standing to assert the Counterclaim; and thus, this Court does not have subject matter jurisdiction to hear the Counterclaim.

### III.  CONCLUSION

WHEREFORE, for the reasons discussed herein, Plaintiff respectfully requests that this Court grant the Plaintiff's Motion to Dismiss Defendant's Counterclaim.

Respectfully submitted,

*/s/ Lance C. McCardle*
Lance C. McCardle
Texas Bar No. 24128047
FISHMAN HAYGOOD LLP
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252 (phone)
(504) 586-5250 (facsimile)
lmccardle@fishmanhaygood.com

and

Ronald D. Stutes
Texas Bar No. 19452600
Fairchild, Price, Haley & Smith, L.L.P.
2341 Dueling Oaks, suite 100
Tyler, Texas 75703
(903) 617-5276
ronald.stutes@fairchildlawfirm.com

*Counsel for Plaintiff John White*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 24th day of July, 2024, a true and correct copy of this Motion was served via that Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned proceeding.

*/s/ Lance C. McCardle*
