

# BILL OF SALE

This Bill of Sale (the "Agreement") is made and entered into as of September 5, 2017 (the "Effective Date"), by and among Greenleaf Resources, Inc., a Mississippi corporation ("Seller") and John F. White, Jr., a Louisiana resident ("Purchaser"). Each of the Seller and Purchaser is sometimes individually or collectively referred to as a "Party" or the "Parties".

## RECITALS

A.    Seller desires to sell, and Purchaser desires to purchase, the assets listed in Exhibit "A" hereto (the "Assets").

NOW, THEREFORE, in consideration of the covenants, promises and representations set forth herein and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1.    Consideration.    The purchase price for the Assets is $1,440,000, of which $233,815.44 will be paid directly to Caterpillar Financial Services Corporation to pay off liens on certain Assets, $28,800 will pay closing expenses, and $1,177,384.56 will be paid to Seller as set forth below.

2.    Financing.    Texas State Bank ("TSB") has provided a loan to Purchaser to finance his acquisition of the Assets.  TSB will wire the Purchase Price directly to Caterpillar and the Seller as set forth in Section 1 above.  Purchaser has separately granted TSB a purchase money security interest in the Assets.

3.    Bill of Sale.  Seller does hereby, effective from and after the Effective Date, sell, convey, assign, transfer and deliver unto Purchaser all right, title, and interest in, to and under all of the Assets.

4.    Seller's Representations and Warranties.    The Seller represents and warrants to the Purchaser that:

        a.    The Seller has full legal authority to enter into and exercise its obligations under this Agreement.

        b.    The Seller is validly existing, and in good standing and has all requisite authority to carry on business as currently conducted.

        c.    The Seller has all necessary power, authority and capacity to enter into this Agreement and to carry out its obligations. The execution and delivery of this Agreement, and this transaction has been duly authorized by all necessary corporate action on the part of the Seller.

        d.    For all Assets delivered by Seller to Purchaser, the Seller is the absolute beneficial owner of the Assets, with good and marketable title, free and clear of any liens, charges, encumbrances or rights of others.

1225523v.2

EXHIBIT 1

e.   There has been no act or omission by the Seller that would give rise to any valid claim relating to a brokerage commission, finder's fee, or other similar payment.

f.   The Seller is a resident of the United States for the purposes of the Internal Revenue Code.

g.   This Agreement has been duly executed and delivered by the Seller and constitutes a legal and binding obligation of the Seller, enforceable in accordance with its terms.

h.   The Seller warrants to the Purchaser that each of the representations and warranties made by it is accurate and not misleading at the Effective Date. The Seller acknowledges that the Purchaser is entering into this Agreement in reliance on each warranty and representation. The representations and warranties of Seller set forth above shall survive the Effective Date.

i.   This Agreement and the acts contemplated hereunder do not constitute a violation of or a default under, or conflict with, any term or provision of any contract, commitment, indenture, or other agreement, or any other restriction of any kind, to which Seller is a party or by which Seller is bound.

j.   The sale of the Assets does not require Seller to obtain any approval or consent of, or give notice to or make any filing with any governmental authority bearing on the validity of this Agreement that is required by law or the regulations of any such governmental authority.

k.   Seller represents and warrants it will pay all federal, state, and local taxes relating to the sale of the Assets for which Seller is responsible, including but not limited to sales tax associated with the sale of the Assets.

5.   Purchaser's Representations and Warranties.   The Purchaser represents and warrants to the Seller the following:

a.   The Purchaser has full legal authority to enter into and exercise its obligations under this Agreement.

b.   The Purchaser is a resident of the United States for the purposes of the Internal Revenue Code.

c.   This Agreement has been duly executed by the Purchaser and constitutes a legal and binding obligation of the Purchaser, enforceable in accordance with its terms.

d.   The Purchaser has no knowledge that any representation or warranty given by the Seller in this Agreement is inaccurate or false.

2

EXHIBIT 1

e. The representations and warranties given in this Agreement are the only representations and warranties. The Purchaser has given no other representation or warranty, either expressed or implied, to the Seller.

f. The Purchaser warrants to the Seller that each of the representations and warranties made by it is accurate and not misleading at the Effective Date. The Purchaser acknowledges that the Seller is entering into this Agreement in reliance on each warranty and representation. The representations and warranties of Purchaser set forth above shall survive the Effective Date.

6. <u>Excluded Liabilities</u>. Under no circumstance shall Purchaser be obligated to pay or assume any liability of Seller, including the following, whether fixed or contingent, recorded or unrecorded, known or unknown:

a. any obligation or liability (whether known or unknown) accruing, arising out of, or relating to Seller's ownership or operation of the Assets;

b. any obligation or liability accruing, arising out of, or relating to any act or omission (or suspected or alleged act or omission) by Seller or any of its staff, employees, agents, vendors or representatives;

c. any long-term indebtedness, including capital lease obligations ;

d. any indebtedness for borrowed money, including indebtedness owed to a bank or other similar financial institution;

e. any obligation or liability accruing, arising out of, or relating to any federal, state or local investigations, claims or actions with respect to acts or omissions (or suspected or alleged acts or omissions) of Seller;

f. any taxes arising or resulting from or in connection with Seller's ownership and/or operation of the Assets

g. any taxes for which Seller is liable pursuant to this Agreement resulting from or payable in connection with the sale of the Assets;

h. liabilities for expenses incurred by Seller incidental to the preparation of this Agreement, the preparation or delivery of materials or information requested by Purchaser, or the consummation of the transactions contemplated hereby, including all broker, counsel and accounting fees or any account payable that is attributable to legal and accounting fees and similar costs incurred by Seller that are directly related to the sale of any of the Assets;

i. liabilities arising from or in connection with (i) any order of any governmental authority, or (ii) the violation of any law.

3

EXHIBIT 1

7.    <u>Indemnity.</u>  Each Party shall defend, indemnify and hold the other Party harmless from and against all such claims arising out of or relating to any false or misleading representation or warranty made by such Party.

8.    <u>Further Assurances.</u>  Seller each hereby agrees that, at any time and from time to time after the Effective Date, upon the request of Purchaser and without further consideration, Seller shall duly execute, acknowledge and deliver all such further assignments, transfers, conveyances, documents relating to the conveyance of title of the Assets, powers of attorney and assurances (and will cause to be done all and every such further acts) as may be required to more effectively convey, transfer to and vest in Purchaser, and to put the Purchaser in possession of, any of the Purchased Assets.

9.    <u>Governing Law.</u>  This Bill of Sale shall be governed by the laws of the State of Louisiana without regard to its conflict of laws principles.

10.    <u>Severability.</u>  Any term or provision of this Bill of Sale that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

11.    <u>Amendment, Waiver, etc.</u>  No amendment, modification or discharge of this Bill of Sale, and no waiver hereunder, shall be valid or binding unless set forth in writing and duly executed by the Party against whom enforcement of such amendment, modification, discharge or waiver is sought.

12.    <u>Binding Effect; Bill of Sale.</u>  This Bill of Sale shall be binding upon, inure to the benefit of and be enforceable by the parties hereto and their respective successors and assigns; provided, however, that Seller may not assign this Bill of Sale to any person (it being understood by the parties hereto that any purported Bill of Sale by Seller shall be null and void).

13.    <u>Third-Party Beneficiaries.</u>  Nothing in this Bill of Sale, express or implied, is intended or shall be construed to create any third-party beneficiaries.

14.    <u>Counterparts; Facsimiles.</u>  This Bill of Sale may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute one and the same instrument, respectively. Executed copies of the signature pages of this Bill of Sale sent by facsimile or transmitted electronically in Portable Document Format ("PDF") shall be treated as originals, fully binding and with full legal force and effect, and the Parties waive any rights they may have to object to such treatment. Any Party delivering an executed counterpart of this Bill of Sale by facsimile or PDF also may deliver a manually executed counterpart of this Bill of Sale, but the failure to deliver a manually executed counterpart shall not affect the validity, enforceability, and binding effect of this Bill of Sale.

(Signature Page Follows)

4

EXHIBIT 1

STATE OF LOUISIANA
PARISH OF Orleans

THUS DONE AND PASSED on this 6 day of September, 2017, in the presence of the undersigned competent witnesses, who hereunto subscribed their names together with the said appearer and me, Notary, after due reading of the whole.

WITNESSES:                                      PURCHASER:

_Marianne E Burns_                              _John F White_
Print Name: MARIANNE E. BURNS                   John F. White, Jr.

_Janet P Suthe_                                 _John Werner_
Print Name: JANET P C. THER                     Notary Public
                                                Print Name: John Werner
                                                Notary/Bar Roll #: 23362
                                                My Commission Expires: Death

STATE OF TEXAS
COUNTY OF _____

THUS DONE AND PASSED on this ____ day of September, 2017, in the presence of the undersigned Notary, after due reading of the whole.

WITNESSES:                                      SELLER:

                                                Greenleaf Resources, Inc.
_____
Print Name: _____
                                                By: _____
_____                Name:  Edgar L. Vines, Jr.
Print Name: _____                Title:   President

(Signature Page to Bill of Sale)

EXHIBIT 1

STATE OF LOUISIANA
PARISH OF _____

THUS DONE AND PASSED on this ____ day of Se ptember, 2017, in the presen ce of the un dersi gn competen twi tnesses who hereunto subscribed their names to gether with the sai d a ppea r and me, Notary, after due rea din of the whole.

WITNESSES:                              **PURCHASER:**


_____ — John F. White, Jr.
Print Name: _____


_____ — Notary Publi c _____
Print Name: _____      Print Name: _____
                                  Notary/Bar Roll #: _____

                                  My Commission Expires: _____

STATE OF TEXAS
COUNTY OF _Ward_

THUS DONE AND PASSED on this _6th_ day of September, 2017, in the presence of the un dersi gn Notary, a ft due rea din of the whole.

WITNESSES:                              **SELLER:**

                                        Greenleaf Resources, Inc.

_____
Print Name: _JEFF BRAMMER_               By: _____
                                        Name: Edgar L. Vines, Jr.
_____              Title:  President
Print Name: _Bre Ann Creech_

EXHIBIT 1

EXHIBIT "A"

Attached

EXHIBIT 1

EXHIBIT A

Greenleaf to John White JR. Equipment

| Manufacture | Description | Year Model | Serial # | Hours /miles | Purchase Price | Market value as of 8/24/2017 |
|---|---|---|---|---|---|---|
| Caterpillar | Unit # 46 RM 500 Mixer | 2012 | CATRM500KASW00404 | 2230 | 600,000.00 | 450,000.00 |
| Caterpillar | Unit # 36 CP 56 Roller | 2013 | 0C5P00680 | 4131 | 160,000.00 | 125,000.00 |
| Caterpillar | Unit # 26 140M2 Blade | 2013 | M9D01052 | | 335,000.00 | 220,000.00 |
| Caterpillar | Unit # 41 D6T XWVP | 2013 | CAT00D6TCRCW01165 | | 365,000.00 | 225,000.00 |
| Caterpillar | Unit # 40 D6T | 2013 | 0GMK00555 | 6,295 | 335,000.00 | 210,000.00 |
| Caterpillar | Unit# 29 324 Track Hoe | 2014 | CAT0324ECPMW00924 | | 285,000.00 | 175,000.00 |
| Caterpillar | Unit # 112 279 Skid Steer | 2014 | 0GTL00622 | 2,174 | 63,880.00 | 50,000.00 |
| Caterpillar | Unit# 25 140 H Blade | 2004 | 0APM01550 | 7,000 | 150,500.00 | 90,000.00 |
| Free (#287) | Unit # 287 Spay Rig Trailer | 2017 | 11W3C242XHW315877 | | 84,181.30 | 84,181.30 |
| (#287) | Graco Reactor 2 Elite, Air Compressor, Probler P2, 60' Hose, Advanced Control Technology | | E-XP2i Integrated - P22091 | | | |
| (#287) | Graco Hoses | | 246055 and 24Y241 | | | |
| (#287) | Hose Rack and 16' Cargo Trailer | | 7x16 CW Trailer | | | |
| (#287) | TI Transfer Pump Graco Drum Mixer | | 256200 and 24C729 | | | |
| WW (#413) | Unit # 413 Spray Rig Trailer | 2017 | 5WKGE2829H1044662 | | 84,181.30 | 84,181.30 |
| (#413) | John Deere 40kW Gen | | B-GCRS40-40 | | | |

EXHIBIT 1

Greenleaf to John White JR. Equipment

| Manufacturer | Description | Year Model | Serial # | Hours / miles | Purchase Price | Market Value as of 8/24/2017 |
|---|---|---|---|---|---|---|
| (#413) | Morse Industrial High Temp Dryer | | 9210-02 | | | |
| (#413) | Elite Reactor, 20.4 kW Heaters, 210' Heated Hose | | H-XP3 | | | |
| (#413) | Air Gun | | 246102 | | | |
| Atlas | Unit # 23 185CFM Air Compressor | | 13ZMP10236100527 | | 8,500.00 | 5,000.00 |
| Fiat Allison | Unit# 131 Front End Loader | 2004 | DGM40608 R130.2 | 6831 | 85,000.00 | 40,000.00 |
| Caterpillar (No Pictures) | Unit# 133 2 ft Trackhoe bucket | 2014 | | | 13,000.00 | 8,000.00 |
| JohnDeere | Unit 144 125 kva generator | 2006 | | | 19,500.00 | 15,000.00 |
| ATKDU | Unit 155 Pressure Washer on tra er | 2015 | 16VPX1221F2014599 | | 17,142.00 | 10,000.00 |
| tias | Unit 161 Sand Blast R | 2009 | 40040102SN023255 | | 12,000.00 | 12,000.00 |
| | B   R | | | | | |
| tal | | | | | 267,864.00 | 180,852.00 |
| | | | | | | |

2

EXHIBIT 1