UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| JOHN WHITE,<br><br>    Plaintiff,<br><br>v.<br><br>LLOYD GILLESPIE<br><br>    Defendant. | Case No. 9:24-CV-00085-MJT |

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

NOW INTO COURT, through undersigned counsel, comes Plaintiff, John White, who respectfully submits this First Amended Complaint against Defendants, Lloyd Gillespie ("Gillespie") and RB Global, Inc. ("Ritchie Bros.," and together with Gillespie, "Defendants"), seeking damages arising from Defendants' conversion of certain pieces of equipment owned by Plaintiff:

### PARTIES, JURISDICTION AND VENUE

1.

Plaintiff, John White, is a person of full age of majority who is a citizen of the state of Louisiana.

2.

Defendant, Lloyd Gillespie, is a person of full age of majority who is a citizen of the state of Texas.

3.

Defendant, RB Global, Inc., is a Canadian corporation having its principal place of business in Westchester, Illinois.  RB Global, Inc.'s common stock trades on the New York Stock Exchange under the ticker symbol "RBA."  RB Global, Inc. was formerly known as "Ritchie Bros. Auctioneers Incorporated," and one of its current marketplace brands includes Ritchie Bros., the world's largest auctioneer of commercial assets and vehicles.  There are multiple Ritchie Bros.' locations within the State of Texas.

4.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and Plaintiff and Defendants are citizens of different states, creating diversity of citizenship.

5.

This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 and the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.

The matter in controversy is between a citizen of the State of Louisiana and citizens of Texas and Illinois, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

7.

Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391.  One of the Defendants resides in this judicial district, and a substantial part of the events or omissions

giving rise to the claims occurred within this judicial district.  Further, Defendants are all subject to personal jurisdiction in this judicial district.

8.

This Court has personal jurisdiction over Defendants since they transact business within this State and Defendant RB Global, Inc. has multiple offices in this State; have committed tortious acts or omissions within this State; regularly do or solicit business, or engage in other persistent courses of conduct, or derive substantial revenue from goods, purchased, used or consumed or services rendered in this State. The activities of Defendants within this State are substantial and not isolated.  In addition, this action arises out of transactions and operations connected with and incidental to Defendants' business within this State.

9.

Further, Defendants conspired with each other in this State, and a substantial portion of the acts in furtherance of their conspiracy took place in this State.

## FACTUAL ALLEGATIONS

10.

Plaintiff seeks damages arising from the conversion by Defendants of the following equipment (the "Converted Equipment"):

| Manufacturer | Description | Year Model | Serial Number |
| --- | --- | --- | --- |
| Caterpillar | Unit #36 CP 56 Roller | 2013 | 0C5P00680 |
| Caterpillar | Unit #41 D6T XWVP | 2013 | CAT00D6TCRCW01165 |
| Caterpillar | Unit #40 D6T | 2013 | 0GMK00555 |

11.

The Converted Equipment had a combined original purchase price of more than $800,000. The combined market value of the Converted Equipment at the time that it was converted has been calculated to be in excess of $400,000.

12.

The Converted Equipment was purchased, with other equipment, by Plaintiff from Greenleaf Resources, Inc. ("Greenleaf") pursuant to a Bill of Sale dated effective as of September 5, 2017.  *See* a copy of the Bill of Sale, attached hereto as Exhibit "A."

13.

Plaintiff purchased the Converted Equipment using funds loaned to Plaintiff by Texas State Bank. The funds advanced by Texas State Bank were secured by, among other collateral, the Converted Equipment. Texas State Bank filed UCC financing statements, copies of which are attached hereto as Exhibit "B," in the public records in connection with the loan of funds to Plaintiff to purchase the Converted Equipment.

14.

During the time that the Converted Equipment was owned by Greenleaf, Greenleaf had financed the Converted Equipment with Caterpillar Financial Services Corporation. In connection with the purchase by Plaintiff of the Converted Equipment from Greenleaf, Plaintiff obtained payoff statements.  *See* Payoff Statements for the Converted Equipment, attached hereto as Exhibit "C."

15.

Contemporaneously with the Bill of Sale between Plaintiff and Greenleaf, Plaintiff paid off the remaining balances owed to Caterpillar Financial Services Corporation for the Converted Equipment. The liens and other rights held by Caterpillar Financial Services Corporation with respect to the Converted Equipment were extinguished upon payment by Plaintiff.

16.

After Plaintiff purchased the Converted Equipment from Greenleaf, Plaintiff initially leased the Converted Equipment back to Greenleaf for use. When Greenleaf ceased operations in

2021, Plaintiff took back possession of the Converted Equipment, which was moved to, and stored at, a timber farm located near Zavalla, Texas.

17.

Without Plaintiff's knowledge or permission, Gillespie, personally and/or through persons acting on his behalf and at his direction, traveled to the timber farm near Zavalla, Texas, and arranged for the Converted Equipment to be removed from the yard and taken to a location designated by Gillespie.

18.

Plaintiff contacted Gillespie through counsel to inform Gillespie that Gillespie had taken equipment owned by Plaintiff.

19.

Gillespie initially denied that he had taken the Converted Equipment and also failed to inform Plaintiff about the whereabouts of the Converted Equipment. Despite Plaintiff's amicable demand on Gillespie, Gillespie failed and/or refused to return the Converted Equipment.[1]

20.

In his First Amended Answer filed on June 24, 2024, Gillespie—*for the first time*—admitted that he had taken at least two pieces of the Converted Equipment and sold them at a Ritchie Bros.' auction on June 16, 2021, for the total sum of $147,500. *See* Rec. Doc. No. 8 at ¶¶ 13, 31. *See also* Rec. Doc. No. 14 at ¶¶ 13, 31

---

[1] An entity affiliated with Gillespie recently asserted a demand in Texas state court seeking a declaration that the affiliated entity has superior rights than Plaintiff to certain equipment other than the Converted Equipment. The equipment detailed in that separate state suit is separate from the Converted Equipment, and Plaintiff is not claiming that Gillespie converted any equipment listed in the state-court action by Gillespie 's affiliated entity.

3946073v1

21.

To the extent this is correct, this sales price is far below the fair market value of the Converted Equipment at the time of the supposed sale.

22.

As a result of Defendants' misconduct, Plaintiff is now stuck in the very unfortunate situation of having to pay a loan owed to Texas State Bank for the purchase of the Converted Equipment that Defendants have allegedly sold to an undisclosed third party.

23.

Gillespie has taken the position in the past that he and/or an entity with which he is affiliated purchased certain promissory notes and/or other rights from Caterpillar Financial Services Corporation that he claims vested him with rights to the Converted Equipment. Gillespie has nonetheless failed to provide any proof of any such rights, and Plaintiff paid off the amounts owed to Caterpillar Financial Services Corporation for the Converted Equipment at the time Plaintiff purchased the Converted Equipment from Greenleaf.

24.

More recently, in his several Answers filed in response to Plaintiff's Complaint, Gillespie claims that he had the right to take the Converted Equipment because an entity affiliated with Gillespie had acquired a security interest in the Converted Equipment in June 2015 *and* because Plaintiff is allegedly indebted to that entity as a guarantor of certain promissory notes in the amounts of $700,000 and $300,000 issued in 2015 and 2016, respectively. *See* Commercial Promissory Note dated June 2, 2015, attached as Exhibit "D" and Commercial Promissory Note dated May 11, 2016, attached as Exhibit "E."

25.

Gillespie's supposed defense has no merit and is legally and factually incorrect for several reasons.

26.

As an initial matter, neither Gillespie nor his affiliated entity ever acquired a security interest in the Converted Equipment.

27.

The security interest to which Gillespie refers is evidenced by a UCC Financing Statement filed with the Texas Secretary of State on June 11, 2015. *See* June 11, 2015, UCC Financing Statement, attached as Exhibit "F." Exhibit F clearly shows that Gillespie's entity acquired a security interest in very specific property owned by Greenleaf. There is an attachment to the Financing Statement detailing the specific pieces of equipment by model and serial number subject to the security interest, and notably, the Converted Equipment is *not* on this list.

28.

Notwithstanding that Gillespie never had a security interest in the Converted Equipment, the debt to which Gillespie refers has been extinguished through a combination of cash payments and a deed in lieu of foreclosure of certain land located in Ward County, Texas.

29.

Indeed, in July 2018, on behalf of his entity, Gillespie signed a Release and Termination, in which he agreed, among other things, that (i) all obligations of Borrower to Lender under the Notes shall have been paid in full; (ii) Borrower would be released from any and all obligations under the Notes; (iii) each Guarantor shall be released and discharged from any and all obligations under the Guaranties; and (iv) all liens, pledges, charges, security interests and other encumbrances granted by Borrower in favor of Lender under the Loan Documents shall be

unconditionally and irrevocably terminated and released. *See* July 2018, Release and Termination, attached as Exhibit "G."

30.

Importantly, as part of this Release, Plaintiff paid $1,050,000 to Gillespie's entity and agreed to guaranty a $144,000 note issued by Greenleaf in favor of Gillespie's entity. *See* July 3, 2018, Commercial Promissory Note, attached as Exhibit "H." The parties agreed and understood that the payment of $1,050,000 and new $144,000 note constituted a pay-off of the prior promissory notes and that the Plaintiff would be released as a guarantor. *See* July 2, 2018, Email from John Werner, attached as Exhibit "I."

31.

Gillespie even executed Releases of the Liens associated with both the $700,000 and $300,000 promissory notes. *See* Release of Lien for $700k Note, attached as Exhibit "J." *See also* Release of Lien for $300k Note, attached as Exhibit "K."

32.

This note was also secured by 16.54 acres of land in Ward County, Texas. *See* July 3, 2018, Deed of Trust, attached as Exhibit "L."

33.

Later, on May 1, 2020, a new $191,870 note was made between non-party DF Contractors, LLC and Gillespie's entity that *replaced* the $144,000 note and that was also secured by the same 16.54 acres of land referenced in the above $144,000 note. *See* May 1, 2020, Promissory Note, attached hereto as Exhibit "M."

34.

Finally, on September 2, 2020, DF Contractors, LLC and Gillespie's entity executed a Deed in Lieu of Foreclosure, reflecting that the entity released the borrower of the $191,870 note

(which, again, replaced the $144,000 note) from all liability for the indebtedness and obligations under the May 1, 2020, Promissory Note in exchange for Gillespie's entity taking ownership of the 16.54 acres. *See* Sept. 2, 2020, Deed in Lieu of Foreclosure, attached as Exhibit "N."

35.

Thus, Plaintiff owes nothing further to Gillespie or Gillespie's entity; and he certainly did not at the time that Gillespie took the Converted Equipment.

36.

Moreover, even if Gillespie had a valid lien against the Converted Equipment (which he did not) and even if Plaintiff did still owe a debt to Gillespie (and he did not), Gillespie violated the law by exercising self-help in taking and selling the Converted Equipment—and the collateral of Texas State Bank—without proper notice to both the owner and the secured party.

37.

Texas law is explicitly clear that a creditor needs to provide notice before it sells or otherwise disposes of collateral, and Gillespie did not provide notice to either White or Texas State Bank prior to his improper seizure and subsequent sale of the Converted Equipment.

38.

Gillespie was required "to provide reasonable notification when disposing of repossessed collateral." *Wilson v. Cap. Partners Fin. Grp. USA, Inc.*, No. 05-20-00704-CV, 2022 WL 2437595, at *3 (Tex. App. July 5, 2022).

39.

Further, Gillespie was obligated to provide "reasonable authenticated notification of disposition" to Plaintiff and other secured parties before disposing of the property. The notice must (a) describe the debtor and the secured party, (b) describe the collateral, (c) describe the method of intended disposition, (d) inform the debtor that it is entitled to an accounting of the

3946073v1

unpaid debt along with any charge for the accounting, and (e) state the time and place for the disposition.

40.

As the Fifth Circuit explained in *SMS Fin., LLC v. ABCO Homes, Inc.,* "The purpose of this notification is to give the debtor an opportunity to discharge the debt, arrange for a friendly purchaser, or to oversee that it is conducted in a commercially reasonable manner." 167 F.3d 235, 242 (5th Cir. 1999); *see also Knights of Columbus Credit Union v. Stock*, 814 S.W.2d 427, 430 (Tex. App. 1991), *writ denied* (Dec. 4, 1991) ("The purpose of the required notice is to allow the debtor an opportunity to protect his interest in the collateral.").

41.

Courts hold secured parties to high standards when determining the reasonableness of notification prior to selling a debtor's property. For example, the court held that notice to the debtor that there would be a public auction was insufficient to justify the subsequent private sale when the public auction did not yield sufficient bids. *Van Brunt v. BancTexas Quorum, N.A.*, 804 S.W.2d 117, 119 (Ct. App. Tex., Dallas 1989). The court explained that the purpose of notice was to provide "the debtor the opportunity to pay the debt, find a buyer, or to attend the sale and bid on the property or have others do so, to the end that the property will not be sacrificed by a sale at less than its true value." *Id.* at 120-21. But this is exactly what appears to have happened in this case.

42.

Gillespie did not employ any of the required steps for properly seizing property under Texas law, nor did he follow any proper procedure for giving Plaintiff or Texas State Bank notice of his intent to sell the seized property.

43.

Instead, Gillespie personally, or through persons acting on his behalf and at his direction, travelled to the Zavalla timber farm and illegally removed the Converted Equipment, and then proceeded to sell the equipment at auction without giving Plaintiff the required notice to protect his collateral.

44.

Accordingly, any claim that Gillespie had to the Converted Equipment is extinguished by his own improper "self-help" seizure and subsequent sale of the Plaintiff's property, rendering Gillespie liable for damages in the amount of any loss caused by such failure to comply.

45.

Ritchie Bros. conspired with Gillespie to sell the Converted Equipment even though Gillespie did not have title to the Converted Equipment and even though the Converted Equipment was subject to liens in favor of Texas State Bank.

46.

Ritchie Bros. failed to follow proper protocol to ensure that Gillespie had the authority to sell the Converted Equipment, and that the equipment was not encumbered by a lien. In fact, Ritchie Bros.' own website details the protocol the company is supposed to follow when selling equipment, including gathering ownership information from sellers such as titles and "information about liens."

47.

Had Ritchie Bros. asked Gillespie for documentation supporting his ownership of the Converted Equipment, and authority to sell the equipment, Gillespie would not have been able to provide sufficient information. Similarly, Gillespie was required to disclose the existing Texas State Bank lien to Ritchie Bros. under the company's own selling policies, but neither Gillespie

nor Ritchie Bros. followed this protocol as that would have prevented both Defendants from profiting from the illegal sale of the Plaintiff's property.

48.

Ritchie Bros. deliberately turned a blind eye to Gillespie's lack of ownership and authority to sell the Converted Equipment, despite the fact that auctioneers are charged with obtaining knowledge regarding whether a seller has title and/or authority to sell equipment. Auctioneers must take appropriate steps to assure themselves of title to the asset being sold, and that assets are not encumbered by liens. Ritchie Bros. was keenly aware of the risk of selling equipment without taking these precautions – namely, that it can be held liable for conversion.

## COUNT ONE
## CONVERSION – GILLESPIE & RITCHIE BROS.

49.

Plaintiff re-alleges and re-incorporates the foregoing paragraphs as if fully set forth herein.

50.

Pursuant to the Bill of Sale dated September 5, 2017, Plaintiff is the owner, and/or had entitlement to possession, of the Converted Equipment.

51.

Gillespie unlawfully and without authorization assumed and exercised dominion and control over the Converted Equipment to the exclusion of Plaintiff and/or inconsistent with the Plaintiff's rights as an owner.

52.

Plaintiff demanded return of the Converted Equipment, and Gillespie refused to return (and to otherwise show cause in any way to support his conversion of) the Converted Equipment. Gillespie's unlawful dominion and control over the Converted Equipment continues to this day.

53.

The Converted Equipment was the personal property of Plaintiff, but Gillespie wrongfully exercised dominion or control over such property; and eventually, with the assistance of Ritchie Bros., sold at least some of the Converted Equipment to a third party.

54.

Ritchie Bros. knowingly or recklessly participated in the misappropriation and conversion of property from Plaintiff. Ritchie Bros. was aware that Gillespie was wrongfully exercising dominion or control over the personal property of Plaintiff. Ritchie Bros. knew or should have known that it was participating in this wrongful conversion of personal property.

55.

The conversion of property by Gillespie with the assistance of Ritchie Bros. was a proximate cause of actual damages to Plaintiff.

56.

Plaintiff seeks all resulting damages and other available relief arising from Defendants' conversion of the Converted Equipment, as well as costs of this proceeding and pre-and post-judgment interest.

**COUNT TWO**
**VIOLATION OF THE PROVISIONS OF THE UNIFORM COMMERCIAL CODE - GILLESPIE**

57.

Plaintiff re-alleges and re-incorporates the foregoing paragraphs as if fully set forth herein.

58.

Gillespie violated the law by exercising self-help in taking and selling the Converted Equipment—and the collateral of Texas State Bank—without proper notice to both the owner and the secured party.

59.

Gillespie did not provide notice to either Plaintiff or Texas State Bank prior to his improper seizure and subsequent sale of the Converted Equipment. *See* Tex. Bus. & Com. Code Ann. §§ 9.610, 9.611.

60.

Gillespie failed to provide Plaintiff or Texas State Bank with notice that (a) describes the debtor and the secured party, (b) describes the collateral, (c) describes the method of intended disposition, (d) informs the debtor that it is entitled to an accounting of the unpaid debt along with any charge for the accounting, and (e) state the time and place for the disposition. *See* Tex. Bus. & Com. Code Ann. § 9.613.

61.

In fact, Gillespie did not employ any of the required steps for properly seizing property under Texas law, nor did he follow any proper procedure for giving Plaintiff or Texas State Bank notice of his intent to sell the seized property.

62.

Instead, Gillespie personally, or through persons acting on his behalf and at his direction, travelled to the Zavalla timber farm and illegally removed the Converted Equipment, and then proceeded to sell the equipment at auction without giving Plaintiff the required notice to protect his collateral.

63.

Accordingly, any claim that Gillespie had to the Converted Equipment is extinguished by his own improper "self-help" seizure and subsequent sale of the Plaintiff's property, rendering Gillespie liable for damages in the amount of any loss caused by such failure to comply. Tex. Bus. & Com. Code Ann. § 9.625

## COUNT THREE
## ALTERNATIVE CLAIM FOR BREACH OF CONTRACT AND/OR WRONGFUL REPOSSESSION - GILLESPIE

64.

Plaintiff re-alleges and re-incorporates the foregoing paragraphs as if fully set forth herein.

65.

In response to Plaintiff's demand for return of the Converted Equipment, Gillespie asserted he and/or an entity with which he is affiliated purchased certain promissory notes and/or other rights from Caterpillar Financial Services Corporation that he claims vested him with rights to the Converted Equipment.

66.

Plaintiff denies that Gillespie and/or any affiliate of Gillespie purchased any promissory note and/or other rights associated with the Converted Equipment. To the extent Gillespie provides any support that he purchased any such note(s) or rights (which is denied), however, Gillespie has breached his obligations with respect to those promissory notes and/or other rights, because Plaintiff paid off the indebtedness owed to Caterpillar Financial Services Corporation for the Converted Equipment at the time Plaintiff purchased the Converted Equipment pursuant to the Bill of Sale dated September 5, 2017.

67.

Plaintiff also denies that he owed any sums to Gillespie and/or any affiliate of Gillespie under any promissory notes or guarantees, particularly those attached as Exhibits hereto, at the time that Gillespie took the Converted Equipment.  Further, Gillespie has acted in bad faith in connection with those promissory notes and the satisfaction thereof.

68.

By taking the Converted Equipment, Gillespie alternatively breached the underlying contracts and/or wrongfully repossessed the Converted Equipment because the underlying obligations, if any, owed to Gillespie had been extinguished by Plaintiff's payment to Caterpillar Financial Services Corporation in connection with the September 5, 2017, Bill of Sale, as well as the payment of cash and tender of property.

69.

Plaintiff thus alternatively seeks all damages to which he is entitled as a result of Gillespie's breach of contract and/or wrongful repossession of the Converted Equipment.

70.

Plaintiff further seeks recovery of his reasonable attorney's fees in connection with this claim pursuant to Texas Civil Practice & Remedies Code § 38.001(8).

## COUNT FOUR
## CIVIL CONSPIRACY – GILLESPIE & RITCHIE BROS.

71.

There was a meeting of the minds between Gillespie and Ritchie Bros. to commit the wrongful conduct described herein, including conversion, breach of contract, and violations of the uniform commercial code.

72.

Ritchie Bros. acquired knowledge of Gillespie's wrongful possession of the Converted

Equipment. Despite its knowledge, Ritchie Bros. continued to serve Gillespie and facilitated the sale of the Converted Equipment to a third party, playing a pivotal role in Gillespie's wrongdoing.

73.

Ritchie Bros. is responsible for the wrongdoing committed by Gillespie. In particular, Ritchie Bros. is responsible for Gillespie's conversion of the Converted Equipment and improper sale of the Converted Equipment. Ritchie Bros.' actions in furthering this conspiracy were taken during the conspiracy's operation. Indeed, Ritchie Bros.' actions were taken to assist Gillespie and further his misconduct.

74.

But for the overt acts taken by Ritchie Bros. to further the objectives of Gillespie's activities described herein, Gillespie would not have been able to transfer the Converted Property at the auction. The conspiracy caused damage to Plaintiff.

## JURY DEMAND

Plaintiff demands trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

Therefore, Plaintiff, John White, asks that this Court deem this First Amended Complaint good and sufficient and that, after due proceedings are had, this Court enter a Judgment in favor of Plaintiff and against Defendants awarding:

1. all damages to which Plaintiff is entitled;
2. attorneys' fees as prayed for herein;
3. costs and pre- and post-judgment interest; and
4. any other relief to which Plaintiff is legally entitled.

.

- 18 -

          Respectfully submitted,

          */s/ Lance C. McCardle*
          Lance C. McCardle
          Texas Bar No. 24128047
          FISHMAN HAYGOOD LLP
          201 St. Charles Avenue, 46th Floor
          New Orleans, Louisiana 70170-4600
          (504) 586-5252 (phone)
          (504) 586-5250 (facsimile)
          lmccardle@fishmanhaygood.com

          *Counsel for Plaintiff John White*