UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

|  |  |
|---|---|
| JOHN WHITE, | ) |
| Plaintiff, | ) Case No. 9:24-CV-00085-MJT |
| v. | ) |
| LLOYD GILLESPIE | ) |
| Defendant. | ) |

**MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM AND INCORPORATED MEMORANDUM IN SUPPORT**

Plaintiff John White (hereinafter, "White") respectfully files this Motion to Dismiss and Incorporated Memorandum in Support and asks this Court to dismiss the Counterclaim filed by Defendant Lloyd Gillespie (hereinafter, "Defendant" or "Gillespie").[1] As discussed in more detail below, the Counterclaim must be dismissed in its entirety under Fed. R. Civ. Proc. 12(b)(1) for lack of subject matter jurisdiction because Defendant, in his individual capacity, lacks standing to assert a Counterclaim on behalf of non-party Gillespie Partners, Ltd. arising out of a purported debt owed to Gillespie Partners, Ltd.

## I.     FACTUAL BACKGROUND

Plaintiff purchased equipment from Greenleaf Resources, Inc. ("Greenleaf") pursuant to a Bill of Sale dated effective as of September 5, 2017.[2]  Three pieces of equipment listed below ("Converted Equipment") form the heart of this dispute:[3]

| Manufacturer | Description | Year Model | Serial Number |
|---|---|---|---|
| Caterpillar | Unit #36 CP 56 Roller | 2013 | 0C5P00680 |
| Caterpillar | Unit #41 D6T XWVP | 2013 | CAT00D6TCRCW01165 |
| Caterpillar | Unit #40 D6T | 2013 | 0GMK00555 |

Plaintiff purchased the Converted Equipment using funds loaned to Plaintiff by Texas State Bank.[4] The funds advanced by Texas State Bank were secured by, among other collateral, the Converted Equipment.[5]

During the time that the Converted Equipment was owned by Greenleaf, Greenleaf had financed the Converted Equipment with Caterpillar Financial Services Corporation.[6] In connection with the purchase by Plaintiff of the Converted Equipment from Greenleaf, Plaintiff obtained payoff statements.[7]  Contemporaneously with the Bill of Sale between Plaintiff and Greenleaf, Plaintiff paid off the remaining balances owed to Caterpillar Financial Services

---

[1] Rec. Doc. 35.
[2] Amended Complaint at ¶ 12.
[3] *Id.*  at ¶ 10.
[4] *Id.*  at ¶ 13.
[5] *Id.*  at ¶ 13.
[6] *Id.*  at ¶ 14.
[7] *Id.*  at ¶ 14.

3999822v1

Corporation for the Converted Equipment.[8] The liens and other rights held by Caterpillar Financial Services Corporation with respect to the Converted Equipment were extinguished upon payment by Plaintiff.[9]

After Plaintiff purchased the Converted Equipment from Greenleaf, Plaintiff initially leased the Converted Equipment back to Greenleaf for use.[10] When Greenleaf ceased operations, Plaintiff took back possession of the Converted Equipment, which was moved to, and stored at, a timber farm located near Zavalla, Texas.[11]  Without Plaintiff's knowledge or permission, Gillespie, personally and/or through persons acting on his behalf and at his direction, traveled to the timber farm near Zavalla, Texas, and arranged for the Converted Equipment to be removed from the yard and taken to a location designated by Gillespie.[12]

Plaintiff contacted Gillespie through counsel to inform Gillespie that Gillespie had taken equipment owned by Plaintiff.[13]  Gillespie initially denied that he had taken the Converted Equipment and also failed to inform Plaintiff about the whereabouts of the Converted Equipment.[14]  Despite Plaintiff's amicable demand on Gillespie, Gillespie failed and/or refused to return the Converted Equipment.[15]

In his First Amended Answer filed on June 24, 2024, Gillespie—*for the first time*—admitted that he had taken at least two pieces of the Converted Equipment and sold them at a

---

[8] *Id.* at ¶ 15.
[9] *Id.* at ¶ 15.
[10] *Id.* at ¶ 16.
[11] *Id.* at ¶ 16.
[12] *Id.* at ¶ 17.
[13] *Id.* at ¶ 18.
[14] *Id.* at ¶ 19.
[15] *Id.* at ¶ 19.

Ritchie Bros.' auction on June 16, 2021, for the total sum of $147,500.[16] To the extent this is correct, this sales price is far below the fair market value of the Converted Equipment at the time of the supposed sale.[17] As a result of Defendants' misconduct, Plaintiff is now stuck in the very unfortunate situation of having to pay a loan owed to Texas State Bank for the purchase of the Converted Equipment that Defendants have unlawfully taken and allegedly sold to an undisclosed third party.[18]

Gillespie has taken the unfounded position in the past that he and/or an entity with which he is affiliated purchased certain promissory notes and/or other rights from Caterpillar Financial Services Corporation that he claims vested him with rights to the Converted Equipment.[19] Gillespie has nonetheless failed to provide any proof of any such rights, and Plaintiff paid off the amounts owed to Caterpillar Financial Services Corporation for the Converted Equipment at the time Plaintiff purchased the Converted Equipment from Greenleaf.[20]

More recently, in his several Answers filed in response to Plaintiff's Complaint in this case, Gillespie claims that he had the right to take the Converted Equipment because an entity affiliated with Gillespie had acquired a security interest in the Converted Equipment in June 2015 *and* because Plaintiff is allegedly indebted to that entity as a guarantor of certain promissory notes in the amounts of $700,000 and $300,000 issued in 2015 and 2016, respectively.[21]

---

[16] *Id.* at 20. *See also* Rec. Doc. No. 8 at ¶¶ 13, 31. *See also* Rec. Doc. No. 14 at ¶¶ 13, 31
[17] *Id.* at 21.
[18] *Id.* at 22.
[19] *Id.* at 23.
[20] *Id.* at 23.
[21] *Id.* at 24.

Gillespie's supposed defense has no merit and is legally and factually incorrect for several reasons. As an initial matter, neither Gillespie nor his affiliated entity ever acquired a security interest in the Converted Equipment.[22] The security interest to which Gillespie refers is evidenced by a UCC Financing Statement filed with the Texas Secretary of State on June 11, 2015.[23] This document clearly shows that Gillespie's entity acquired a security interest in very specific property owned by Greenleaf.[24] There is an attachment to the Financing Statement detailing the specific pieces of equipment by model and serial number subject to the security interest, and notably, the Converted Equipment is *not* on this list.[25]

Notwithstanding that Gillespie never had a security interest in the Converted Equipment, the debt to which Gillespie refers has been extinguished through a combination of cash payments and a deed in lieu of foreclosure of certain land located in Ward County, Texas.[26] Indeed, in July 2018, on behalf of his entity, Gillespie signed a Release and Termination, in which he agreed, among other things, that (i) all obligations of Borrower to Lender under the Notes shall have been paid in full; (ii) Borrower would be released from any and all obligations under the Notes; (iii) each Guarantor shall be released and discharged from any and all obligations under the Guaranties; and (iv) all liens, pledges, charges, security interests and other encumbrances granted by Borrower in favor of Lender under the Loan Documents shall be unconditionally and irrevocably terminated and released.[27] Importantly, as part of this Release, Plaintiff paid $1,050,000 to Gillespie's entity and agreed to guaranty a $144,000 note issued by Greenleaf in

---

[22] *Id.* at 26.
[23] *Id.* at 27.
[24] *Id.* at 27. *See also* Exhibit "F" to Amended Complaint.
[25] *Id.* at 27.
[26] *Id.* at 28.

favor of Gillespie's entity.[28]  The parties agreed and understood that the payment of $1,050,000 and new $144,000 note constituted a pay-off of the prior promissory notes and that the Plaintiff would be released as a guarantor.[29]  Gillespie even executed Releases of the Liens associated with both the $700,000 and $300,000 promissory notes.[30]  This note was also secured by 16.54 acres of land in Ward County, Texas.[31]  Later, on May 1, 2020, a new $191,870 note was made between non-party DF Contractors, LLC and Gillespie's entity that *replaced* the $144,000 note and that was also secured by the same 16.54 acres of land referenced in the above $144,000 note.[32]

Finally, on September 2, 2020, DF Contractors, LLC and Gillespie's entity executed a Deed in Lieu of Foreclosure, reflecting that the entity released the borrower of the $191,870 note (which, again, replaced the $144,000 note) from all liability for the indebtedness and obligations under the May 1, 2020, Promissory Note in exchange for Gillespie's entity taking ownership of the 16.54 acres.[33]  Thus, Plaintiff owes nothing further to Gillespie or Gillespie's entity; and he certainly did not at the time that Gillespie took the Converted Equipment.[34]

Moreover, even if Gillespie had a valid lien against the Converted Equipment (which he did not) and even if Plaintiff did still owe a debt to Gillespie (and he did not), Gillespie violated

---

[27] *Id.* at 29.
[28] *Id.* at 30.
[29] *Id.* at 30.
[30] *Id.* at 31.
[31] *Id.* at 32.
[32] *Id.* at 33.
[33] *Id.* at 34.
[34] *Id.* at 35.

3999822v1

the law by exercising self-help in taking and selling the Converted Equipment—and the collateral of Texas State Bank—without proper notice to both the owner and the secured party.[35] Texas law is explicitly clear that a creditor needs to provide notice before it sells or otherwise disposes of collateral, and Gillespie did not provide notice to either White or Texas State Bank prior to his improper seizure and subsequent sale of the Converted Equipment.[36] Gillespie was required "to provide reasonable notification when disposing of repossessed collateral." *Wilson v. Cap. Partners Fin. Grp. USA, Inc.*, No. 05-20-00704-CV, 2022 WL 2437595, at *3 (Tex. App. July 5, 2022).

Further, Gillespie was obligated to provide "reasonable authenticated notification of disposition" to Plaintiff and other secured parties before disposing of the property. The notice must (a) describe the debtor and the secured party, (b) describe the collateral, (c) describe the method of intended disposition, (d) inform the debtor that it is entitled to an accounting of the unpaid debt along with any charge for the accounting, and (e) state the time and place for the disposition.[37] As the Fifth Circuit explained in *SMS Fin., LLC v. ABCO Homes, Inc.,* "The purpose of this notification is to give the debtor an opportunity to discharge the debt, arrange for a friendly purchaser, or to oversee that it is conducted in a commercially reasonable manner." 167 F.3d 235, 242 (5th Cir. 1999); *see also Knights of Columbus Credit Union v. Stock*, 814 S.W.2d 427, 430 (Tex. App. 1991), *writ denied* (Dec. 4, 1991) ("The purpose of the required notice is to allow the debtor an opportunity to protect his interest in the collateral."). Courts hold secured parties to high standards when determining the reasonableness of notification prior to

---

[35] *Id.* at 36.
[36] *Id.* at 37.
[37] *Id.* at 39.

selling a debtor's property. For example, the court held that notice to the debtor that there would be a public auction was insufficient to justify the subsequent private sale when the public auction did not yield sufficient bids. *Van Brunt v. BancTexas Quorum, N.A.*, 804 S.W.2d 117, 119 (Ct. App. Tex., Dallas 1989). The court explained that the purpose of notice was to provide "the debtor the opportunity to pay the debt, find a buyer, or to attend the sale and bid on the property or have others do so, to the end that the property will not be sacrificed by a sale at less than its true value." *Id.* at 120-21. But this is exactly what appears to have happened in this case.

Gillespie did not employ any of the required steps for properly seizing property under Texas law, nor did he follow any proper procedure for giving Plaintiff or Texas State Bank notice of his intent to sell the seized property.[38] Instead, Gillespie personally, or through persons acting on his behalf and at his direction, travelled to the Zavalla timber farm and illegally removed the Converted Equipment, and then proceeded to sell the equipment at auction without giving Plaintiff the required notice to protect his collateral.[39] Accordingly, any claim that Gillespie had to the Converted Equipment is extinguished by his own improper "self-help" seizure and subsequent sale of the Plaintiff's property, rendering Gillespie liable for damages in the amount of any loss caused by such failure to comply.[40]

Gillespie's actions constitute conversion, violations of the Uniform Commercial Code, and breach of contract / wrongful repossession.

---

[38] *Id.* at 42.
[39] *Id.* at 43.
[40] *Id.* at 44.

3999822v1

## II. MOTION TO DISMISS UNDER FED. R. CIV. PRO. 12(b)(1)

### a. Legal Standard

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing Fed. R. Civ. P. 12(b)(1)). Subject matter jurisdiction is limited to actual "cases and controversies" as required under Article III of the Constitution, and "[c]onstitutional standing, which is a plaintiff's personal stake in the outcome of the case, is an essential and unchanging part of the case-or-controversy requirement." *Long v. Cat Exteriors*, No. SA-22-CV-00923-JKP, 2022 WL 17744052, at *1 (W.D. Tex. Dec. 15, 2022) (internal citations and quotations omitted). "Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). To establish standing, the plaintiff must demonstrate: 1) injury in fact; 2) a causal connection between the injury and the Defendant's conduct; and 3) that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). "At a minimum, Article III requires that 'the plaintiff personally suffered some actual or threatened injury that can fairly be traced to the challenged action and is redressable by the courts.'" *ART Midwest, Inc. v. Clapper*, 99-2355, 2009 WL 10646744, at *5 (N.D. Tex. Sept. 22, 2009), *aff'd sub nom. Art Midwest Inc. v. Atl. Ltd. P'ship XII*, 742 F.3d 206 (5th Cir. 2014) (quoting *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 496 (5th Cir. 2007)). In addition, "'a plaintiff generally may not rest his claim to relief on the legal rights of third parties even if he has alleged injury sufficient to satisfy article III.'" *Id.* (quoting *Ensley v. Cody Res., Inc.*, 171 F.3d 315, 319 (5th Cir. 1999)).

When examining a Rule 12(b)(1) challenge, a Court must consider whether the attack on the claim is facial or factual. As the Fifth Circuit Court of Appeals explained in *Cell Sci. Sys. Corp. v. Louisiana Health Serv.*, 804 F. App'x 260, 263 (5th Cir. 2020):

> A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. A 'factual attack,' however, challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.

Defendant, as counterclaimant, bears the burden of proof to demonstrate the court's jurisdiction over its claim since it is the party invoking the Court's jurisdiction to hear the Counterclaim. *Menchaca v. Crysler Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

    **b.**   **Argument**

Defendant Gillespie has attempted to assert a "counterclaim" under Rule 13 of the Federal Rules of Civil Procedure against Plaintiff White. A Counterclaim is a claim that an existing *defendant* has against an existing *plaintiff. See, e.g., W. Coast Tanneries, Ltd. v. Anglo-Am. Hides Co*, 20 F.R.D. 166, 168 (S.D.N.Y. 1957) (citing FED. R. CIV. P. 13) ("A compulsory counterclaim is *any claim that a defendant has against a plaintiff* which 'arises out of the transaction or occurrence that is the subject matter of the [plaintiff's] claim, [and] ….[a] permissive counterclaim, on the other hand, is *any claim a defendant has against a plaintiff* which does not arise 'out of the transaction or occurrence that is the subject matter of the [plaintiff's] claim."). But Defendant Gillespie has not asserted his own claim against Plaintiff White; rather, Defendant Gillespie has attempted to assert a claim on behalf of his affiliated entity, non-party Gillespie Partners.

Defendant has asserted a Counterclaim against the Plaintiff, stating that "Defendant Gillespie, in his capacity as General Partner of *Defendant* Gillespie Partners, Ltd. seeks judgment

against Plaintiff for…"[41] But Gillespie Partners, Ltd. is not a defendant in this case and never has been. Defendant Gillespie was sued in his individual capacity by Plaintiff. Plaintiff did not assert any claims against Gillespie Partners, and Gillespie Partners is not a party to this lawsuit. To have standing to assert the Counterclaim, Defendant Gillespie must demonstrate that he has suffered an "injury in fact," but the injury of which Gillespie complains – if it did, in fact, exist – would belong to Gillespie Partners since that entity holds the alleged security interest in the Converted Equipment. As such, this Court should grant the Plaintiff's motion because Defendant Gillespie in his individual capacity does not have standing to assert the Counterclaim; and thus, this Court does not have subject matter jurisdiction to hear the Counterclaim.

### III. CONCLUSION

WHEREFORE, for the reasons discussed herein, Plaintiff respectfully requests that this Court grant the Plaintiff's Motion to Dismiss the Counterclaim.

Respectfully submitted,

*/s/ Lance C. McCardle*
Lance C. McCardle
Texas Bar No. 24128047
FISHMAN HAYGOOD LLP
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252 (phone)
(504) 586-5250 (facsimile)
lmccardle@fishmanhaygood.com

and

Ronald D. Stutes
Texas Bar No. 19452600
Fairchild, Price, Haley & Smith, L.L.P.
2341 Dueling Oaks, suite 100
Tyler, Texas 75703

---

[41] Rec. Doc. 35 at 15.

- 12 -

(903) 617-5276
ronald.stutes@fairchildlawfirm.com

*Counsel for Plaintiff John White*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 17th day of April, 2025, a true and correct copy of this Motion was served via that Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned proceeding.

*/s/ Lance C. McCardle*

3999822v1